STATE of Minnesota, Respondent,

v.

Carlos Ondre SESSIONS, Appellant.

No. CX–99–2187.

Supreme Court of Minnesota.

Feb. 8, 2001.

John M. Stuart, State Public Defender, Marie Wolf, Asst. State Public Defender, Minneapolis, for Appellant.

Michael A. Hatch, State Attorney General, St. Paul, Amy Klobuchar, Hennepin County Attorney, Paul R. Scoggin, Asst. Hennepin County Attorney, Minneapolis, for Respondent.

## OPINION

RUSSELL A. ANDERSON, Justice.

Appellant Carlos Ondre Sessions was convicted of first-degree murder in violation of Minn.Stat. § 609.185(3) (2000) (intentional murder in the course of committing a burglary) and was sentenced to life in prison. We consider whether the trial court erred by communicating with the jury outside of open court without appel-

lant's knowledge, consent or presence, and without making a contemporaneous record of jury communications and communications with counsel. We hold that the trial court erred by engaging in substantive communications with a deliberating jury outside of open court, without the appellant's knowledge, consent or presence, and without the presence of appellant's counsel and the prosecutor, but that, under the circumstances, the error was harmless beyond a reasonable doubt.

We also consider whether it was error for the trial court to accede to appellant's specific request that the lesser-included offense of second-degree murder not be submitted for jury consideration. We hold that the trial court did not abuse its discretion in not submitting the lesser-included offense of second-degree murder for jury consideration. We also consider the sufficiency of the evidence and hold that the evidence was sufficient to support the jury's verdict. We affirm.

On December 11, 1998, police officers found Lillian Enrooth's body in a pool of blood at the bottom of the basement stairs in her South Minneapolis home. Earlier that morning, bank officials had become suspicious of a man trying to cash a check on the victim's account and had notified police, who then conducted a welfare check at the victim's home and discovered her body.

A forensic expert concluded that Enrooth's death was the result of homicidal violence. The expert estimated that the time of death was within a few hours of 9 a.m. on December 11. According to the forensic expert, a combination of injuries, none immediately fatal, caused the death. The victim, who was 83 years old, suffered two sharp wounds to the back of her head, two slashes to her neck, a dislocated right elbow, a fractured left arm that broke the skin, a lacerated liver, four broken ribs, two fractures of her jaw, a spinal injury and fractured thyroid cartilage. One of the injuries to her face indicated that Enrooth was wearing dentures when she was struck. Her dentures were found on the second story of the home next to clumps of her hair.

Investigators found blood on the interior handles of Enrooth's front door, front porch door, the basement door and doorknob, on the wall along the basement stairs and at the bottom of the stairs. Investigators also found bloody partial shoeprints leading up the stairs from the body, partial shoeprints on broken window glass in the back of the home—the suspected point of entry—and dresser drawers at the bottom of the main floor stairs. The victim's purse and checks were missing.

About 9 a.m. on December 11, appellant went to the home of his cousin, Marquice Harrison, and asked her to cash some checks on the account of a woman. Harrison testified, "He [appellant] said they belonged to someone who had no use for them." Harrison directed appellant to a neighbor, Carmen Allen, who enlisted her boyfriend, Lorenzo Haynes, to assist with cashing the checks. Haynes cashed one of Enrooth's checks. Appellant then approached Joseph Knoebel, a stranger to appellant, and asked Knoebel to help him cash a check. Knoebel cashed a check on Enrooth's account for $599 and less than an hour later attempted to cash a second check for $2,500. He left the bank when a teller took the check to a bank manager after requiring that Knoebel place his thumbprint on the check. Knoebel returned to tell bank officials that he did not believe the check was "good." Police arrested him and went to the victim's home to conduct a welfare check, at which time they found her body.

Authorities located Haynes by entering his Minnesota identification number, which was on the check he cashed, through a police computer system. Haynes in turn identified Allen and Harrison to authorities. Harrison identified appellant to police and identified him in a photo lineup. Allen also identified appellant in a photo

lineup and told police that appellant provided the check that Haynes cashed. Investigators then searched appellant's apartment and found a pair of appellant's athletic shoes with blood on them. Forensic experts concluded that the treads on appellant's athletic shoes significantly matched the partial footprints on the stairs and broken glass in the victim's home.

In addition to finding blood on appellant's shoes, investigators found blood inside appellant's girlfriend's car. Appellant, who had his own set of keys for the vehicle, was driving the car December 11. One DNA test of the blood on appellant's shoes, the car panel, door window, weather stripping, gearshift lever and console cover matched the victim's DNA type and did not match appellant's DNA type. In addition, the predominant, or strongest, DNA type on the steering wheel also matched the victim's DNA type. A second DNA test revealed that the DNA type on the shoes, car panel, door window and gear shift matched the victim's DNA type. The second test revealed a mixture of DNA from two individuals, with the predominant type matching the victim's DNA type. A forensic scientist testified that 99.9989 percent of the population could be excluded as the source of the DNA on appellant's shoes, the car panel, door window and gearshift lever and as the source of the predominant DNA type found on the console cover. The victim could not be excluded as a source.

The trial court read to the jury the parties' stipulation that, if called, a forensic document examiner would testify that the checks that Haynes and Knoebel cashed were not written by Allen, Haynes or Knoebel. The expert also would testify that the writings on the face of the checks included numerous significant similarities

to appellant's writing samples and that it is highly probable that appellant wrote those checks.

Before instructing the jury, the trial court and the prosecutor agreed that the jury should be permitted to consider the lesser-included offense of second-degree murder. Appellant and his counsel requested that the trial court not instruct the jury on second-degree murder and the trial court acceded to appellant's request.

After the jury retired to begin their deliberations, shortly before noon on October 21, 1999, the trial court asked counsel if they wished to be telephoned in the event that the jury requested further instructions and both counsel answered in the affirmative.

The jury's guilty verdict was received in open court, on the record, at 12:08 p.m. on October 22 and appellant immediately was sentenced to the mandatory term of life in prison. No mention was made, and no record made, of written questions and answers exchanged the previous afternoon between the jury and court during jury deliberations. Seven months later, in anticipation of this appeal and on motion [1] of the state's appellate counsel, efforts were made to reconstruct the record from the memories of the trial court and trial counsel.

The trial court recalled telephoning each counsel after the jury submitted its questions, and that counsel agreed to the answers that the court proposed and also agreed that the answers could be written and delivered to the jury room. Trial counsel for the state agreed with the court's recollection of events, but appellant's trial counsel could not remember if the telephone conversation with the court took place. All agreed that appellant was

---

1. If differences arise as to the veracity of the record, the differences are submitted to the trial court and the record is made to conform. If anything material is omitted from or misstated in the record, the trial court on motion of a party or on its own initiative may have the omission or misstatement corrected and approve a supplemental record. Minn.R.Civ. App.P. 110.05; *see also* Minn.R.Crim.P. 28.01, subd. 2 ("Except as otherwise provided in these rules, the Minnesota Rules of Civil Appellate Procedure to the extent applicable shall govern appellate procedures in such cases.").

not told of the jury's questions nor consulted regarding the trial court's proposed answers, and all agreed that appellant did not waive any right to be present.

In an effort to reconstruct the record, the court attached the original notes that contained the jury's questions and the court's answers. All of the notes were stamped "Filed, Hennepin County Court Administrator, 2:04 p.m., October 22, 1999." One note, signed by the jury foreperson with time and date notations of 3 p.m., October 21, reads: "Please reiterate the explanation of 'beyond a reasonable doubt.' " A second note, dated October 21, but without signature or time notation, reads, "Define reasonable doubt." A third note, signed by the jury foreperson with time and date notations of 4:37, October 21, reads, "Can we see the transcript; Do we know when check 5206 was written to the water company?"

A police sergeant testified that check 5206, written to a water company, was the last check that Enrooth wrote. The check was not an exhibit at trial. The trial court's written answer to the jury's note regarding check 5206 was as follows: "There isn't a transcript of any testimony. You must decide the case based upon your collective recollection of the evidence actually presented to you through the witnesse's [sic] testimony, the exhibits and the stipulations." The trial court signed the answer, noting the date and time, 5:50 p.m., October 21. The trial court's recollection is that notes one and two concerning reasonable doubt were· one question. The court sent to the jury a typed answer, unsigned and without time or date notations, patterned after the instruction it gave jurors at the end of closing arguments. The court's answer was taken verbatim from Criminal Jury Instruction 3.03:

> Proof beyond a reasonable doubt is such proof as ordinarily prudent men and women would act upon in their most important affairs. A reasonable doubt is a doubt based upon reason and common sense. It does not mean a fanciful or capricious doubt, nor does it mean beyond all possibility of doubt.

10 Minn. Dist. Judges Ass'n, *Minnesota Practice—Jury Instruction Guides, Criminal,* CRIMJIG 3.03 (4th ed.1999).

Someone printed the word "WHIM" under the word "capricious" on the trial court's typed answer. It appears that the trial court did not make a copy of any of its answers for the record before sending them into the jury room, but the trial court believes that a juror wrote "WHIM" on the instruction after it was delivered to the jury room. The trial court's typed answer also is stamped "Filed,· Hennepin County Court Administrator, 2:04 p.m., October 22, 1999." This suggests that the note was retrieved from the jury room and marked by the court administrator approximately two hours after the jury returned its verdict.

I.

 We first consider whether the trial court erred in communicating with the jury outside of open court, without appellant's knowledge, consent or presence, and without making a contemporaneous record of the communications with the jury or counsel. Through the Confrontation Clause, the Sixth Amendment to the United States Constitution grants a defendant the right to be present at all stages of trial. *See Lewis v. United States,* 146 U.S. 370, 374, 13 S.Ct. 136, 36 L.Ed. 1011 (1892); *see also* Minn.R.Crim.P. 26.03, subd. 1(1) ("The defendant shall be present * * * at every stage of the trial"). Responding to a deliberating jury's question is a stage of trial. *State v. Hudspeth,* 535 N.W.2d 292, 295 (Minn.1995); *see also* Fed.R.Crim.P. 43; 3A Charles Alan Wright, *Federal Practice and Procedure: Criminal 2d* § 724 (1982) ("[C]ommunications [occur] between the court and jury in the absence of the defendant and, not infrequently, his counsel. That such communications are entirely improper is settled."). Thus, the general rule is that a. trial court judge should have no communi-

cation with the jury after deliberations begin unless that communication is in open court and in the defendant's presence. *State v. Schifsky*, 243 Minn. 533, 543, 69 N.W.2d 89, 96 (1955). The court's response to the jury in this case in appellant's absence and without obtaining a waiver from appellant violated his Sixth Amendment right to be present and Rule 26.03, subd. 1(1).

In addition, the Criminal Rules require that a deliberating jury be conducted into open court whenever the jury requests a review of testimony or other evidence or desires to be informed on any point of law. *See* Minn.R.Crim.P. 26.03, subds. 19(2), 19(3). The instruction is mandatory ("shall be conducted to the courtroom") and does not depend on the form or the substance of the court's response. Because the trial court responded to the jury in writing outside of open court and in the absence of a waiver from appellant, the court violated Minn.R.Crim.P. 26.03, subds. 19(2) and 19(3).

The state characterizes the absence of appellant as "innocuous" and suggests that it is not unreasonable to allow trial courts to render noncontroversial answers, after notice to counsel, "without the need to assemble the entire trial ensemble in the courtroom." Our focus is not on the inconvenience of calling necessary personnel into open court, but on the public interest. "The public interest requires that parties to lawsuits or defendants on trial should have nothing to complain of or suspect in the administration of justice." *Schifsky*, 243 Minn. at 543, 69 N.W.2d at 96. Where the rules explicitly require proceedings in open court, and, without defendant's consent, those proceedings are not conducted there, the defendant and society generally lose confidence in the integrity of the proceeding.

Just as troubling is the court's failure to place on the record *any* communications with counsel or jury during deliberations. We are left to review a record reconstructed seven months after trial using only recollections of seemingly brief conversations. Generally speaking, a reconstructed record cannot be as precise or comprehensive as a record made at the time of trial. At a minimum, the lack of a record compounds the lack of confidence society can have in the integrity of the proceedings. We caution district courts to make a contemporaneous record of each stage of trial, particularly a stage as delicate as communications with the jury and with counsel during deliberations. A record is critical to ensure adequate appellate review and a fair process.

■ Even if a defendant is wrongfully denied the right to be present at every stage of trial, a new trial is warranted only if the error was not harmless. *Schifsky*, 243 Minn. at 542, 69 N.W.2d at 96. If the verdict was surely unattributable to the error, the error is harmless beyond a reasonable doubt. *State v. Juarez*, 572 N.W.2d 286, 292 (Minn.1997). When considering whether the erroneous exclusion of a defendant from judge-jury communications constitutes harmless error, we consider the strength of the evidence, *id.* at 291, and substance of the judge's response. *State v. Kindem*, 338 N.W.2d 9, 16–17 (Minn.1983).

■ The state's evidence was strong. Nearly the entire population, but for the victim, can be excluded as a source of the blood found on appellant's shoes and on the console panel, window and gearshift lever in the car he was driving on the day of the murder. Imprints of appellant's shoes were consistent with prints found in the victim's home. In addition, appellant had the victim's checks at or shortly after the time of death, telling his cousin the checks belonged to someone who had no use for them.

A second factor in assessing harmless error in the context of judge-jury communication outside the defendant's presence is the substance of the trial court's responses. *Id.* at 16–17. The court did not issue any new instructions in its responses, and the instruction repeated did not favor

the prosecution or defense. In response to the jury's question regarding the date of the check to the water company, the court appropriately advised jurors that they were to decide the case based upon their own collective recollection of the evidence. As such, the court's communications with the jury were not prejudicial to the rights of the appellant. *See Schifsky,* 243 Minn. at 546, 69 N.W.2d at 98. Therefore, we hold that the verdict was surely unattributable to the error and appellant is not entitled to a new trial.

## II.

We next turn to the trial court's decision not to submit the lesser-included offense of second-degree murder for the jury's consideration. A trial court has discretion to determine whether to instruct the jury on lesser offenses, but must instruct on a lesser offense if the evidence warrants the instruction. *State v. Lee,* 282 N.W.2d 896, 899 (Minn.1979). A trial court instructs on a lesser offense if it is a lesser-included offense and if the evidence reasonably supports a conviction of the lesser degree and justifies a "not guilty" verdict of the greater offense. *State v. Leinweber,* 303 Minn. 414, 422, 228 N.W.2d 120, 125–26 (1975).

An exception to this rule arises if a defendant asks the trial court not to instruct the jury on a lesser-included offense and the court honors the request. A defendant then is precluded from raising the issue on appeal. *State v. Berry,* 309 N.W.2d 777, 785 (Minn.1981).

Appellant does not dispute that he requested that the trial court not instruct the jury on the lesser-included offense and the court honored the request. Appellant is precluded from raising the issue on appeal. *Id.*

## III.

Appellant claims that the evidence presented is not sufficient to sustain a guilty verdict on first-degree murder (intentional murder in the course of committing a burglary). We review the evidence and any inference from it in a light most favorable to the verdict. *State v. DeWald,* 463 N.W.2d 741, 748 (Minn.1990). We assume that the jury believed the state's witnesses and disbelieved testimony to the contrary. *State v. Wahlberg,* 296 N.W.2d 408, 411 (Minn.1980).

Blood consistent with the victim's DNA type and inconsistent with appellant's DNA type was on appellant's shoes, car panel, door window and gearshift lever in the car appellant drove the day that the victim's body was found. The forensic scientist testified that 99.9989 percent of the population, but not the victim, was excluded as the source of the DNA on the shoes, car panel, door window and gearshift lever and of the predominant DNA type on the console cover. Partial footprints leading away from the victim and on the broken window glass were consistent with the soles of appellant's shoes. The injuries inflicted on the 90 pound woman and the distance over which they were inflicted evince an intent to kill her. Appellant possessed Enrooth's checks within hours of her death and stated to his cousin that the owner of the checks no longer would need them. The evidence, viewed in a light most favorable to the verdict, supports the jury's decision to convict appellant of first-degree murder.

We hold that the trial court committed error by engaging in substantive communications with a deliberating jury outside of open court, without the appellant's knowledge, consent or presence, and without the presence of appellant's counsel and the prosecutor, but that, under the specific circumstances, the error was harmless beyond a reasonable doubt. The court did not err in acceding to appellant's request to not submit a lesser-included offense of second-degree murder for jury consideration. Finally, the evidence was sufficient to support the jury's verdict.

Affirmed.