**STATE of Minnesota, Respondent,**

v.

**Herbert Lee HENDRY II, Appellant.**

No. C7–00–2008.

Court of Appeals of Minnesota.

Dec. 4, 2001.

Review Denied Jan. 29, 2002.

---

Mike Hatch, Attorney General; and Amy Klobuchar, Hennepin County Attorney, Donna J. Wolfson, Assistant County Attorney, for respondent.

John Stuart, State Public Defender, Susan J. Andrews, Assistant State Public Defender, for appellant.

Considered and decided by ANDERSON, Presiding Judge, PETERSON, Judge, and AMUNDSON, Judge.

## OPINION

G. BARRY ANDERSON, Judge.

Appellant Herbert Hendry was charged and convicted, after a three-day jury trial, of felon in possession of a firearm, a violation of Minn.Stat. § 624.713, subds. 1(b), 2 (1998). The district court sentenced appellant to the mandatory minimum sentence of 60 months in prison. Appellant challenges his conviction on four grounds: (1) that the reconstructed record does not allow for adequate appellate review and fair process; (2) that the district court erred by failing to notify the attorneys of a jury question during deliberations, by failing to respond to the question, and by failing to maintain a record of the question; (3) that the verdict was attributable to the court's error in handling the question; and (4) that the evidence is not sufficient to support the jury's verdict.

We conclude that the district court record, as supplemented, affords appellant adequate appellate review and fair process. We also conclude that the district court did not err when it failed to contact the attorneys when the jury asked a question, when it failed to respond to the question, and when it failed to maintain a record of the question. Finally, we conclude that the jury's verdict was surely unattributable to

any error by the district court and the evidence was sufficient for the jury to find appellant guilty of felon in possession of a firearm and we therefore affirm.

## FACTS

On the evening of May 23, 1999, Dwayne Champion heard gunshots in his North Minneapolis neighborhood. Champion looked out his second-floor window, across an alley, and observed a man standing on the back porch of a nearby house. Champion called 911 and told the operator that a man was firing a gun and described the shooter as a black male with dreadlocks. Based on Champion's description of the shooter and the location of the shots fired, Minneapolis police officers proceeded to the nearby house and knocked on the door. Appellant answered the door and the officers asked if they could enter the dwelling. Appellant refused to open the door and said he would get the tenant. Sandra Warren came downstairs and opened the door to speak with the officers. The officers asked Warren, a tenant of the house, if they could enter. Warren consented to their entry. The officers immediately took appellant into custody because he matched Champion's description of the shooter. Champion positively identified appellant as the shooter while appellant was in custody at the scene.

The state charged appellant with felon in possession of a firearm, a violation of Minn.Stat. §§ 624.713, subds. 1(b), 2; 609.11 (1998), and reckless discharge of a firearm, a violation of Minn.Stat. § 609.66, subds. 1a(2), (b)(1) (1998). At trial, Carla Pemberton, a friend of Warren's who was

consuming alcohol in a bedroom of the house,[1] testified that she witnessed appellant assist another individual, Tony (also known as "Payroll"), load a malfunctioning sawed-off firearm. Pemberton testified that after appellant loaded the gun, he "pretended to point it out the bedroom window, and everybody in the room just kind of freaked and laughed and told him he was crazy and ran out of the room, and he did not shoot it out the window." She testified that the two men left the upstairs of the house and went downstairs. She could not confirm, however, that the two men actually went outside because she remained in the upstairs living room.

Subsequently, Pemberton testified that she heard gunfire in rapid succession, but could not identify the shooter because she was inside the house. After the gunfire ceased, appellant and Tony re-entered the upstairs of the house laughing. After the police came upstairs to search for the weapon, Pemberton told police she believed the gun was in the basement of the house. Police searched the basement and discovered a sawed-off .22 caliber semi-automatic rifle and .22 caliber ammunition; the police also found several spent .22 caliber bullet casings in the backyard. The state was unable to show at trial that the sawed-off .22 caliber rifle discharged these particular casings; but it showed that the rifle could have discharged the casings. Champion also testified that appellant was the man he observed discharging the firearm.

At the close of the trial, the presiding judge gave final jury instructions;[2] the

---

1. Respondent correctly points out that Pemberton did not admit to smoking crack cocaine that night, as appellant alleges in his brief. Instead, Pemberton's cross-examination revealed that she *may* have used crack cocaine that night.

2. These instructions included the charge: "If you wish to communicate with the Court while you are deliberating, please have your foreperson write a note and deliver it to the deputy."

jury retired to deliberate at 10:18 a.m.[3] Because the presiding judge was unable to remain in the courtroom, a substitute judge agreed to handle the remaining judicial responsibilities, including receipt of the verdict. At some undetermined time during its deliberations, the jury delivered a message to the bailiff addressed to the presiding judge. The note read: "If we do not reach a consensus by the end of the day, what happens?"

What happened next is subject to considerable dispute. It is undisputed that (1) the attorneys were neither notified of the question nor consulted regarding a response to the question; and (2) the original record did not include the question or any answer to the question. The jury returned a guilty verdict at 3:22 p.m.

In preparing his appeal, appellant discovered the written jury question in the district court file. On appeal, appellant first asked this court to remand the matter to the district court to reconstruct the record and conform the record to reflect the substitute judge's handling, if any, of the question. This court granted appellant's motion and the presiding judge, based on an affidavit made by a law clerk, made additional findings and ordered that the record be supplemented to conform to his findings.

The presiding judge found that he "was not advised of the question at the time [it was made], and [that he] has no independent knowledge regarding the question or the actions taken in response to the question." He also found that the substitute judge "does not recall the substance of the question or the actions taken in response to the question." Based on the law clerk's affidavit, however, the presiding judge found that the substitute judge "did not

write an answer to the jury's question, or instruct [the law clerk] to deliver an answer to the jury through the bailiff." He added, "[The law clerk] informed the bailiff that she did not have an answer from [the substitute judge] to be delivered to the jury." He concluded by noting that "[a] record of the question, and the response to the question, if any, was not made." This appeal followed.

## ISSUES

I. Whether the district court record, as reconstructed, allows for adequate appellate review and fair process?

II. Whether the district court erred by not notifying the attorneys of the jury's question during deliberations, by not responding to the question, and by not making a record of the question?

III. Whether the verdict was surely unattributable to any error by the district court?

IV. Whether the evidence was sufficient for the jury to find appellant guilty of felon in possession of a firearm?

## ANALYSIS

I. Whether the district court record, as reconstructed, allows for adequate appellate review and fair process?

■ Appellant's threshold argument is that the record, even as supplemented by the district court, does not afford appellant "adequate appellate review and a fair process." Appellant argues that the reconstructed record still does not answer the specific question whether the substitute judge responded (or did not respond) to the jury's question. Appellant notes the

---

**3.** After the jury retired, the presiding judge requested that the attorneys give their telephone numbers to the court so they could be

reached "in case there's a question or a verdict."

discrepancy between the law clerk's sworn affidavit and his attorney's conversation with the law clerk during which the law clerk allegedly remarked that the substitute judge "responded to the jury and told it to 'keep deliberating.' " Because of this factual ambiguity, according to appellant, "[t]his court simply cannot conclude, based on the reconstructed record, that appellant was not prejudiced." Appellant argues he must be granted a new trial "[b]ecause this court cannot conclude, beyond a reasonable doubt, that the verdict was 'surely unattributable to the error.' "

■ In evaluating communications between a court and a jury during deliberations, the supreme court has cautioned that "[a] record is critical to ensure adequate appellate review and a fair process." *State v. Sessions,* 621 N.W.2d 751, 756 (Minn.2001); *see also State v. Charles,* 634 N.W.2d 425, 433 (Minn.App.2001). A district "court's factual findings are subject to a clearly erroneous standard of review[.]" *State v. Williams,* 535 N.W.2d 277, 286 (Minn.1995).

Because the record, as supplemented by the district court order, clearly suggests that a response was not given to the jury's question, we conclude that the reconstructed record is not clearly erroneous and is sufficient to afford appellant adequate appellate review and fair process.

Appellant's argument rests on the district court's last finding that "[a] record of the question, and the response to the question, *if any,* was not made." (emphasis added). Viewing the district court order in its entirety, the presiding judge made three primary factual findings: (1) neither judge had knowledge of either the question or any response; (2) the law clerk was the only individual who recalled the circumstances of the question, and she recalled that the substitute judge did not respond

to the question; (3) in any case, no record was made of the question.

The district court's last finding, therefore, must be construed along with the findings that immediately precede it. It is clear that the district court adopted the law clerk's recollection of the events when reconstructing the record and did not adopt the hearsay assertions found in appellant's counsel's affidavit, which stated that the law clerk told appellant's counsel that the substitute judge told the jury to "keep deliberating." Although the last finding, taken by itself, could be construed to contemplate that possibility, such a construction is not compelled by the other findings.

Because the district court's order supplementing the record is based on the recollection of the only individual who remembered the circumstances surrounding the jury's question, the district court's factual findings are not clearly erroneous. Therefore, we conclude the record is sufficient to afford appellant adequate appellate review and fair process.

II. Whether the district court erred by not notifying the attorneys of the jury's question during deliberations, by not responding to the question, and by not making a record of the question?

Appellant argues in the alternative that if the court did not respond to the jury's question, the court erred because it did not notify the attorneys of the question, did not respond to the question, and did not make a record of the question.

■ Minn. R.Crim. P. 26.03 generally governs a court's procedures during a criminal trial and Minn. R.Crim. P. 26.03, subd. 19 specifically governs jury deliberation and the verdict. The interpretation of the rules of criminal procedure is a question of law subject to de novo review.

*State v. Nerz,* 587 N.W.2d 23, 24–25 (Minn. 1998).

### A. Failure to notify the attorneys.

■ Appellant argues that the district court erred by not notifying the attorneys of the jury question when it was asked. The court's error, appellant argues, prevented the attorneys from consulting with the court as to a proper response, and denied appellant his right to be present at every stage of the trial in violation of his constitutional rights.

Absent waiver, a "defendant shall be present * * * at every stage of the trial." Minn. R.Crim. P. 26.03, subd. 1(1). The right to be present under the rule is broader than the federal constitutional right, which is grounded in the Sixth Amendment to the United States Constitution. *See State v. Ware,* 498 N.W.2d 454, 457 (Minn.1993). "Responding to a deliberating jury's question is a stage of trial." *Sessions,* 621 N.W.2d at 755 (citing *State v. Hudspeth,* 535 N.W.2d 292, 295 (Minn. 1995)). There are specific procedures for handling jury questions:

1. If the jury, after retiring for deliberation, desires to be informed on any point of law, the jurors, after notice to the prosecutor and defense counsel, shall be conducted to the courtroom. The court shall give appropriate additional instructions in response to the jury's request unless: (a) the jury may be adequately informed by directing their attention to some portion of the original instructions; (b) the request concerns matters not in evidence or questions which do not pertain to the law of the case; or (c) the request would call upon the judge to express an opinion upon factual matters that the jury should determine.

2. The court need not give additional instructions beyond those specifically requested by the jury, but in its discretion the court may also give or repeat other instructions to avoid giving undue prominence to the requested instructions.

3. The court after notice to the prosecutor and defense counsel may recall the jury after it has retired and give any additional instructions as the court deems appropriate.

Minn. R.Crim. P. 26.03, subd. 19(3); *see also Sessions,* 621 N.W.2d at 756.

It is a question of first impression whether this procedure requires a court to notify the attorneys, and permit them to consult with the court as to a proper response, when a jury's question does not concern the facts or law of the case, but, rather, arguably concerns a housekeeping question. *See State v. Kelley,* 517 N.W.2d 905, 908 (Minn.1994) (attorneys need not be notified about questions regarding "physical comforts and the like") (quoting ABA Standards for Criminal Justice § 15–3.7(b) (1986)). Under the rule, however, jury questions concerning "any point of law," require notification and perhaps additional jury instructions. *See* Minn. R.Crim. P. 26.03, subd. 19(3)(1) (stating that during deliberations, "[i]f the jury * * * desires to be informed on any point of law, the jurors, after notice to the prosecutor and defense counsel, shall be conducted to the courtroom" and "[t]he court *shall* give appropriate additional instructions * * *." (emphasis added)); *Sessions,* 621 N.W.2d at 756 (stating that instruction is mandatory, regardless of the form or substance of the court's response). Nevertheless, a district court is not required to give additional instructions if the jury's "request concerns matters not in evidence *or questions which do not pertain to the law of the case."* Minn. R.Crim. P. 26.03, subd. 19(3)(1)(b) (emphasis added).

Moreover, most case law addressing similar procedural questions involves cases

where there was an *answer* to the jury's question, and the failure to notify the attorneys or permit defendant to be present in open court was error.[4] This court, however, has suggested in dictum that "[d]efense counsel and prosecutor should *always* be notified whenever the jury returns with a question or a request to review testimony or other evidence." *Farr,* 357 N.W.2d at 167 (citing Minn. R.Crim. P. 26.03, subd. 19(2)) (emphasis added).[5]

We conclude that the mere failure to notify the attorneys when a jury asks a question is not error as a matter of law, however advisable it might be as a matter of practice. Rather, the attorneys must be notified when the jury asks for a review of testimony or other evidence, Minn. R.Crim. P. 26.03, subd. 19(2)(1.), or when the jury desires to be informed on a point of law. Minn. R.Crim. P. 26.03, subd. 19(3)(1.). Because the jury did not ask for a review of testimony or other evidence, or ask to be informed on a point of law, the district court did not err as a matter of law

by failing to contact the attorneys when the question was asked.

## B. *Failure to respond.*

■ Appellant also argues that the district court erred by failing to respond to the jury's question. As articulated above, the rules of criminal procedure do not require a response to *every* question; instead, the rules require attorney notification, an open court proceeding, the defendant's presence, and perhaps additional appropriate instructions when the jury "requests a review of certain testimony or other evidence," Minn. R.Crim. P. 26.03, subd. 19(2)(1.), or when the jury "desires to be informed on any point of law." Minn. R.Crim. P. 26.03, subd. 19(3)(1.). The rules are also clear that additional instructions need not be given if "the request concerns matters not in evidence or questions which do not pertain to the law of the case." Minn. R.Crim. P. 26.03, subd. 19(3)(1.)(b); *see also State v. Murphy,* 380 N.W.2d 766, 772 (Minn.1986) ("The court has the discretion to decide

---

4. *Sessions,* 621 N.W.2d at 756 (error where answer was given outside of open court even where counsel authorized the answer); *Hudspeth,* 535 N.W.2d at 295 (error where answer was given "in open court, in the presence of the attorneys but in defendant's absence"); *Kelley,* 517 N.W.2d at 908 (error for "court to communicate with the jury without notice to and outside the presence of the defendant and his counsel"); *State v. Kindem,* 338 N.W.2d 9, 17 (Minn.1983) (court's response to two questions without notifying the attorneys or permitting the defendant to be present when answering the questions was error); *State v. Richardson,* 332 N.W.2d 912 (Minn.1983) (error for court to respond to questions "without notifying counsel or allowing counsel to be present"); *State v. Schifsky,* 243 Minn. 533, 69 N.W.2d 89, 97–98 (1955) (error for court to answer jury's questions in open court, but without counsel or defendant present); *Charles,* 634 N.W.2d at 433 (error for court and attorneys to discuss the court's responses to jury requests without the defendant pres-

ent); *State v. Petrich,* 494 N.W.2d 298, 300 (Minn.App.1992) (error for court to answer jury's questions in the absence of defense counsel and defendant), *review denied* (Minn. Feb. 23, 1993); *State v. Farr,* 357 N.W.2d 163, 167 (Minn.App.1984) (error for court to answer jury's questions without contacting defense counsel); *cf. State v. Mims,* 306 Minn. 159, 235 N.W.2d 381, 385 (1975) (error for judge to enter jury room and confer with jurors about their deliberations).

5. *Farr* cited Minn. R.Crim. P. 26.03, subd. 19(2)(1.), which provides:

If the jury, after retiring for deliberation, requests a review of certain testimony or other evidence, the jurors shall be conducted to the courtroom. The court, after notice to the prosecutor and defense counsel, may have the requested parts of the testimony read to the jury and permit the jury to re-examine the requested materials admitted into evidence.

whether to amplify previous instructions, reread previous instructions, or give no response at all." (citation omitted)).

The jury asked, "If we do not reach a consensus by the end of the day, what happens?" This question concerns the procedures employed by the district court if, and when, a jury fails to render its verdict by the end of the day; the question does not implicate factual or legal questions to be decided by the jury during its deliberations.[6]

Because we conclude the question was housekeeping in nature and not a request to review testimony or other evidence, or an inquiry on a "point of law," neither an answer nor additional instructions were required.

*C. Failure to make a record.*

Appellant argues that the district court erred by not making a record of the question. The district court found that "[a] record of the question, and the response to the question, if any, was not made."

■ Although the supreme court has cautioned that reconstructing a record is problematic for ensuring adequate appellate review, we conclude that a reconstructed record, made through additional findings, may in some cases cure an initial failure to make a record of communications between a judge and a jury. *Sessions,* 621 N.W.2d at 756; *cf. Charles,* 634 N.W.2d at 433 (noting that a "district court *should* * * * create[ ] a contemporaneous record of its discussions with the attorneys during jury deliberations" (emphasis added)).

Here, the presiding judge made findings that supplemented the record. These findings explained the circumstances surrounding the jury's question and the absence of a response to the question. Therefore, we conclude that the district court did not err as a matter of law by originally failing to make a record of the jury's question.

III. Whether the verdict was surely unattributable to any error by the district court?

■ We have already concluded that the district court did not err when it failed to notify the attorneys, when it failed to answer the question, and when it failed to make a record because of the housekeeping nature of the question. We also conclude that even if the court did err in any of these respects, the verdict was surely unattributable to any error.

■ Appellant correctly recognizes that error, by itself, does not necessarily mean that a new trial should be granted. Even where there is error, "a new trial is warranted *only* if the error was not harmless." *Sessions,* 621 N.W.2d at 756 (citation omitted). "If the verdict was surely unattributable to the error, the error is harmless beyond a reasonable doubt." *Id.* (citation omitted); *Ware,* 498 N.W.2d at 457–58. The supreme court has explained,

Harmless error analysis is better labelled as "harmless error impact analy-

---

**6.** We should also emphasize that the facts of this case are distinguishable from those cases where a district court commits reversible error by forcing a jury to reach a verdict when the jury is deadlocked. *See, e.g., State v. Jones,* 556 N.W.2d 903, 912 (Minn.1996); *Petrich,* 494 N.W.2d at 300. When a jury is deadlocked, and is subsequently instructed that it may not deadlock and that it must reach a verdict, this may constitute reversible error. *See, e.g., State v. Peterson,* 530 N.W.2d 843, 846 (Minn.App.1995). Here, however, the jury asked a vague question about the district court's sequestration procedures; it did not indicate that it was deadlocked or that it could not reach a verdict by the end of the day.

sis," because it is the impact of that error that the appellate court must consider. The overwhelming evidence of guilt is a factor, often a very important one, in determining whether, beyond a reasonable doubt, the error has no impact on the verdict.

*State v. Juarez,* 572 N.W.2d 286, 291 (Minn.1997). In performing harmless error analysis, this court "look[s] to the record as a whole." *Id.* at 292. "[W]here the record is silent as to the possibility of harm, a presumption generally favors the defendant and a new trial is granted." *Schifsky,* 69 N.W.2d at 97.

 The supreme court has also articulated a more particular standard where the alleged error is the defendant's exclusion from a judge-jury communication. Under this standard, we examine the context of the judge-jury communication and the strength of the evidence against the defendant. *Sessions,* 621 N.W.2d at 756. Where a district court's communications with a jury are "neutral and nonsubstantive and could not have played a significant role in the verdict" the error is harmless beyond a reasonable doubt. *Hudspeth,* 535 N.W.2d at 295; *see also Kindem,* 338 N.W.2d at 17 (error not prejudicial where the "court's answer to the question presumably would have been the same even if defendant and attorneys had been consulted"); *State v. Danforth,* 573 N.W.2d 369, 373 (Minn.App.1997) ("Contact between the judge and jury on matters not substantively relating to the case (such as matters relating to physical comfort and the like), however, is not necessarily error * * *." (citation omitted)), *review denied* (Minn. Feb. 19, 1998). In the absence of the attorneys and the defendant, however, an

instruction that the jury must reach a verdict is coercive. *See Kelley,* 517 N.W.2d at 908; *Petrich,* 494 N.W.2d at 300.

Appellant argues that because the question was never answered, "the jury may have been compelled to rush to judgment" and the failure to answer the question "may well have forced the jury to return a verdict in haste." In sum, appellant argues that the court's silence was tantamount to a response and that its response by silence prejudiced appellant. Consequently, because the district court failed to answer the question, appellant argues, "this court cannot conclude, beyond a reasonable doubt, that the verdict was 'surely unattributable to the error.' "

### A. Context of the judge-jury communication

It is difficult to apply the supreme court's test to the facts in this case because there was no bilateral judge-jury communication in the defendant's absence. Assuming, though, that appellant properly characterizes the court's silence as a response, the question then becomes: What was the response? [7]

A likely response to the question would have informed the jury that it was not sequestered and that it would have been allowed to go home if it failed to reach a verdict by the end of the day. *Cf. Kelley,* 517 N.W.2d at 910 ("While some *ex parte* communications may indeed be harmless * * * where the jury [is] left virtually without guidance on the critical issue of how to handle a deadlock, * * * a new trial is warranted."). The effect of the court's failure to respond, however, is inherently speculative; in fact, it is not surprising that appellant and respondent

---

**7.** The proper inquiry here is what was the actual "response by silence," instead of what would have been the response if the court had responded to the question. There is little

doubt that the court would have notified the jury that it would have been able to return home, because appellant waived his right to sequester the jury.

reach different conclusions about the potential effect the failure to respond may have had on the jury. Appellant speculates that the failure to respond may have led the jury to reach a verdict in haste and rush to judgment; respondent counters that there is no evidence that the verdict was reached in haste because the verdict was rendered at 3:22 p.m., well before the end of the day, after the jury deliberated for only four hours over a relatively simple issue: whether appellant was in possession of a firearm.[8]

Because there is no indication in the record, or in appellant's subsequent investigation into the circumstances surrounding the question, we cannot reach into the minds of the jurors and divine the effect the failure to respond had on the jurors under the circumstances. Moreover, because the jury reached a verdict at 3:22 p.m., this *fact* supports our conclusion that the jury did not reach a verdict in haste or rush to judgment because of the district court's failure to respond to the question.

### B. Strength of the evidence

In addition to examining the context of the judge-jury communication, we must also examine the strength of the evidence against appellant. *Sessions*, 621 N.W.2d at 756. Appellant asserts that the state should have dusted his hands for gunpowder residue and that the .22 casings found outside the home should have been tested for his fingerprints. Appellant also challenges Champion's testimony, arguing that Champion could not have seen through foliage, which appellant says obstructed Champion's view that night. Appellant also argues that he should not have been charged with felon in possession; rather, he should have been charged with con-

structive possession because he did not live in the house where he was arrested.

We must examine the record and the evidence presented at trial to assess the strength of the evidence against the appellant. *Id.; State v. Breaux*, 620 N.W.2d 326, 333 (Minn.App.2001) (noting that this court looks to the "record as a whole" (quotation omitted)).

The state offered testimonial evidence from two eyewitnesses placing appellant at the scene possessing a sawed-off .22 caliber rifle, which was also found at the scene. Although appellant attempted to impeach Champion's eyewitness testimony by questioning his ability to see through foliage at nighttime, appellant failed to impeach Carla Pemberton's testimony that appellant helped load the rifle in the house and then point it out a window, before going downstairs with Tony. The state also offered police testimony that the .22 casings (found outside the house) could have been fired by the sawed off .22 caliber rifle found at the scene, although the state was unable to show with any certainty that the casings came from that rifle. The only defense witness testified that he had taken pictures of the area in question, which purportedly showed the amount of foliage that would have been present, and, according to appellant, would have prevented Champion from recognizing the shooter.

We conclude that the state's evidence against appellant is strong. *See Sessions*, 621 N.W.2d at 756. Therefore, because there is no evidence in the record that the jury considered the district court's failure to respond as a response one way or another, and because the state's evidence in this case is strong, any error by the district court in failing to notify, respond, or

---

8. Appellant asserts that the jury rendered its verdict at 4:15 p.m. The jury verdict form, contained in the district record on appeal, was signed at 3:22 p.m. Absent contrary evidence, we must assume that 3:22 p.m. was the time the verdict was rendered.

make a record of the question, is harmless and the verdict is surely unattributable to any error by the district court in handling the question.

IV. Whether the evidence was sufficient for the jury to find appellant guilty of felon in possession of a firearm?

■ Appellant asserts in his pro se brief that he should be granted a new trial because the evidence was insufficient to prove that he illegally possessed a firearm beyond a reasonable doubt. Appellant's evidentiary arguments are stated elsewhere and are not repeated here.

■ In considering a claim of insufficient evidence, our review is limited to a painstaking analysis of the record to determine whether the evidence, when viewed in the light most favorable to the conviction, is sufficient to allow the jurors to reach the verdict they did. *State v. Webb*, 440 N.W.2d 426, 430 (Minn.1989). We must assume the jury believed the state's witnesses and disbelieved any evidence to the contrary. *State v. Moore*, 438 N.W.2d 101, 108 (Minn.1989). We will not disturb the verdict if the jury, acting with due regard for the presumption of innocence and the requirement of proof beyond a reasonable doubt, could reasonably conclude the defendant was guilty of the charged offense. *State v. Alton*, 432 N.W.2d 754, 756 (Minn.1988).

Here, as stated above, the state's case is strong. Two eyewitnesses corroborate important details about the sequence of events that night. Physical evidence corroborates the eyewitness testimony. Therefore, based on the evidence presented at trial, the jury could have reasonably concluded that the defendant was guilty of felon in possession.

## DECISION

The district court's ability to supplement the record ensured appellant adequate appellate review and fair process, even if the jury's question was not part of the original record. Although the district court, after receipt of a jury question, failed to notify the attorneys, failed to respond to the question, and failed to make a record of the question, it did not err because the question was housekeeping in nature. Moreover, any error by the district court in handling the jury's question did not prejudice appellant; examining the context of the judge-jury communication and the strength of the evidence against appellant, the verdict was surely unattributable to any error in handling the jury's question. Finally, the evidence is sufficient to sustain the jury's verdict finding appellant guilty of felon in possession of a firearm.

**Affirmed.**