Walter Barton **PETERSON, Jr.,**
petitioner, **Appellant,**

v.

**STATE of Minnesota, Respondent.**

No. C9–02–2287.

Court of Appeals of Minnesota.

Dec. 30, 2003.

Robert M. Christensen, Robert M. Christensen, P.L.C., Minneapolis, MN, for appellant.

Mike Hatch, Attorney General, St. Paul, MN; and Patrick J. Ciliberto, Scott County Attorney, Diane M. Hanson, Michael J.

Groh, Assistant County Attorneys, Shako-pee, MN, for respondent.

Considered and decided by SCHUMACHER, Presiding Judge; SHUMAKER, Judge; and PORITSKY, Judge.*

## OPINION

ROBERT H. SCHUMACHER, Judge.

Appellant Walter Barton Peterson challenges his conviction of first-degree criminal sexual conduct under Minn.Stat. § 609.342, subd. 1(e)(ii) (1998) (sexual penetration with physically helpless victim resulting in personal injury), third-degree criminal sexual conduct under Minn.Stat. § 609.344, subd. 1(d) (1998) (sexual penetration with physically helpless person without personal injury), and three counts of contributing to the delinquency of a minor under Minn.Stat. § 260B.425, subd. 1(a) (Supp.1999). Peterson argues the trial court's communication with the jury outside his presence violated his constitutional rights. He also argues he received ineffective assistance of counsel because his defense counsel failed to object to unqualified expert testimony and failed to offer any rebuttal expert testimony. We reverse and remand.

## FACTS

On the evening of June 17, 2000, 17–year–old A.J. began the night intending to stay at her girlfriend's house. The two girls eventually joined D.P. and E.H., two of A.J.'s male friends. All were invited to go boating with Peterson on his boat. A.J.'s girlfriend decided she was not interested in boating and left. However, inclement weather caused them to abandon their plans to go boating and they returned to Peterson's home.

The group gathered in Peterson's garage, and spent the rest of the night drinking beer. The teenagers had brought their own beer, and Peterson offered them marijuana; A.J. had "a couple hits." Later in the evening, E.H. became intoxicated and got sick. D.P. decided to walk him home. When the two boys left, A.J. and Peterson were both in the garage.

What happened during the rest of the night and into the next morning is unclear. A.J. testified that by the time the two boys left, she had drunk approximately seven beers and the effects were amplified by a prescription drug she was taking. A.J. testified at this point, she was "really drunk," and eventually passed out. She does not remember anything after passing out until she woke up in Peterson's bed with him on top of her, having sexual intercourse. Peterson testified A.J. did not appear intoxicated when E.H. and D.P. left; rather she was "in control." He also testified A.J. was not only a willing participant, but was actually the initiator of the sexual conduct.

At the conclusion of the jury trial, the trial court gave the jury final instructions and the jury retired for deliberations. After the jury retired, the court suggested both attorneys leave their telephone numbers and, if there were any questions, the court would "talk to everyone about them before [it] did anything." At the end of the day, the court contacted both attorneys to see if they wished to be present when the court dismissed the jury for the day. Both attorneys waived their presence. At 4:50 p.m., the jury was brought into the courtroom and the court told them to go home and come back the next morning. Before leaving, however, the following ex-

---

* Retired judge of the district court, serving as judge of the Minnesota Court of Appeals by appointment pursuant to Minn. Const. art. VI, § 10.

change took place between the court and the jury:

THE JURY: What happens if we can't decide? What if we can't all agree? Can we stay here until we do or—I'm not saying that we're miles apart. I don't think we are. I think we certainly still have some issues. We have taken a vote. It was not unanimous. I guess we just don't understand the answer to that question, your Honor is, how long do we deliberate?

THE COURT: Keep working. That's all I can say now. Keep working. Okay.

THE JURY: We don't get any access to any of the testimony?

THE COURT: It's unworkable. She takes everything down but it's not in the transcript yet. So we'd have to bring you in and read it.

THE JURY: Is there a possibility if we do need that we can swing that?

THE COURT: That's why we tell you rely on your recollection.

THE JURY: Can I ask a question? I don't know if you can answer this, what we have an issue with, the three things that, the better judgment, experience and common sense. Obviously in this case there's some gray areas where we have conflicting testimony. Don't really know what happened. Now, we have gone over how the law is worded. How much should we rely on those three things?

THE COURT: (No response.)

THE JURY: The defense used the term "fill-in-the-blanks." We don't want to do that. I mean, we're going to try to make a decision based on the evidence and the testimonies.

THE COURT: You have to use your best judgment. If you have specific questions tomorrow, write them out.

Every time I get a question, I call the lawyers and we confer over whether the questions should be answered and how. But at this point it's really up to you. So get some rest. Get some rest. Come back and start fresh at nine o'clock and work on it.

THE JURY: What happens if it goes into Friday?

THE COURT: What's on Friday. Don't worry about that now. Don't worry about it. This is priority number one. Get some rest. Come back start working. Okay?

THE JURY: Okay

The jury returned the next morning and began deliberations without any further questions. The jury found Peterson guilty of all charges.

## ISSUE

Is Peterson entitled to a new trial because he was not present when the trial court communicated with the jury?

## ANALYSIS

■■■ Peterson argues he is entitled to a new trial because his constitutional and statutory right to be present during "critical stages" of trial was denied and the denial was not harmless beyond a reasonable doubt. "Through the Confrontation Clause, the Sixth Amendment to the United States Constitution grants a defendant the right to be present at all stages of trial." *State v. Sessions*, 621 N.W.2d 751, 755 (Minn.2001). Responding to a deliberating jury's question is a stage of trial. *Id.* Thus, the general rule in Minnesota is the trial court should not communicate with the jury after deliberations have begun unless it is done in open court and in the defendant's presence. *Id.* at 755–56. The constitutional right to be present may be waived if done so "competently and intelligently." *State v. Worthy*, 583 N.W.2d 270,

277 (Minn.1998) (citing *Johnson v. Zerbst,* 304 U.S. 458, 465, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938)). In *State v. Ware,* the supreme court held the "decision to waive is a decision not for counsel to make but a personal decision for defendant to make after consultation with counsel." 498 N.W.2d 454, 457 (Minn.1993).

Here, the judge had the jury brought into open court to dismiss them. Although the record indicates that both the state and Peterson's attorney waived their appearance, the court's action in this case went beyond dismissing the jury. Furthermore, the right to be present during a stage of trial is a personal one that only Peterson can waive and he never waived it. *Ware,* 498 N.W.2d at 457. Without Peterson's presence or his waiver of his right to be present, the judge responded to the jury's questions thus denying Peterson his constitutional right to be present.

We conclude the trial court's communication with the jury went beyond responding to "mere housekeeping" questions— those questions addressing matters relating to physical comforts and the like. *See State v. Kelley,* 517 N.W.2d 905, 908 (Minn. 1994) (noting A.B.A. Standard for Criminal Justice 15–3.7(b) distinguishes between matters relating to physical comforts and communication dealing with any aspect of case). We do not address whether responding to housekeeping questions outside a defendant's presence is error. *See State v. Hendry,* 636 N.W.2d 158, 165 (Minn.App.2001) (concluding, as matter of law, trial court did not err in failing to contact attorneys when jury asked housekeeping question that court did not answer), *review denied* (Minn. Jan. 29, 2002).

When a defendant is wrongly denied the right to be present at a stage of trial, a new trial is required unless the error was harmless beyond a reasonable doubt. *Sessions,* 621 N.W.2d at 756. In considering whether the trial court's communication with the jury is harmless beyond a reasonable doubt, we must be mindful of a judge's position in the eyes of the jury. "An act, a sentence, or a word from the presiding judge may exert a controlling influence on the verdict." *State v. Mims,* 306 Minn. 159, 163, 235 N.W.2d 381, 386 (1975) (quotations omitted).

Here, we conclude that the trial court responded to questions from the jury on substantive matters. Although it appears the trial court intended to provide neutral, nonsubstantive responses, the responses are too easily interpreted as providing additional instructions. The response to "keep working" could well be interpreted to mean that the jury must reach a verdict. *See Kelley,* 517 N.W.2d at 909–10 (concluding while court's communications were not coercive on their face, they did not provide careful description of jury obligations, which the court approved in *State v. Martin,* 297 Minn. 359, 211 N.W.2d 765 (1973)). And the response that access to testimony is "unworkable" may well imply that the jury would not be entitled to have any testimony reread. *See State v. Spaulding,* 296 N.W.2d 870, 878 (Minn.1980) (concluding trial court's refusal to reread defendant's testimony at jury's request was prejudicial error in close case).

A trial court's response to a deliberating jury's questions regarding substantive matters provides far too great a possibility the jury will understand the response as an additional instruction. When the communication occurs outside the presence of the defendant and his or her attorney, the defendant is deprived of essential knowledge and stripped of his opportunity for input. *See Kelley,* 517 N.W.2d at 910 (concluding defendant was likely prejudiced by judge-jury communications outside his or his attorney's presence because his attorney was not made aware the jury was

deadlocked and "had no chance to suggest a suitable course of action"). We conclude the trial court's response to questions regarding substantive matters is reversible error.

■ Because we conclude a new trial is required in this case, we do not address Peterson's argument that he was denied his right to effective assistance of counsel. We note, however, this claim generally should be brought before the district court in a post conviction proceeding.

## DECISION

The trial court erred when it responded to the jury's questions regarding substantive matters outside Peterson's presence or his waiver of his right to be present. We cannot conclude beyond a reasonable doubt that the error was harmless.

**Reversed and remanded.**