*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2012).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A13-1932**

State of Minnesota,
Respondent,

vs.

Thomas David Newman,
Appellant.

**Filed September 8, 2014
Affirmed
Halbrooks, Judge**

Ramsey County District Court
File No. 62-CR-11-7310

Lori Swanson, Attorney General, St. Paul, Minnesota; and

John J. Choi, Ramsey County Attorney, Kaarin Long, Assistant County Attorney, St. Paul, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Stephanie A. Karri, Special Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Cleary, Chief Judge; Halbrooks, Judge; and Hooten, Judge.

**U N P U B L I S H E D   O P I N I O N**

**HALBROOKS**, Judge

Appellant challenges his convictions of theft of a motor vehicle and fleeing a peace officer in a motor vehicle arguing that (1) the district court erred by communicating

with the jury outside of his presence without obtaining a waiver from him and (2) his sentence should be vacated because the district court punished him for refusing to accept the state's guilty-plea offer. We affirm.

## FACTS

On August 23, 2011, a Minneapolis resident called police to report that his 2009 Suzuki motorcycle had been stolen. The man told police that the motorcycle started with a key and that he had not given anyone permission to drive the motorcycle.

In early 2011, for reasons unrelated to the missing motorcycle, police installed video surveillance equipment across from appellant Thomas Newman's home. On September 7, 2011, Deputy Rick Werdien was on patrol and used his computer to pull up the video feed showing Newman's home. Deputy Werdien knew that Newman's driver's license had been revoked for the past four years, but saw on the surveillance video that Newman had opened his garage, pushed out a motorcycle, and rode it away.

Deputy Werdien began driving toward Newman's home to issue a citation for driving after revocation. On the way, he saw a man he believed to be Newman riding the motorcycle. Deputy Werdien activated his lights, which also activated his squad camera, and radioed that he was in pursuit of someone on a motorcycle. The man on the motorcycle accelerated and drove the motorcycle through a field. The motorcycle then went through a "little opening" that was between a boulder and a fence. Deputy Werdien could not drive his car through the opening, and the motorcycle disappeared.

Sergeant Anderson heard about Deputy Werdien's chase on his police radio and drove to Newman's home. When he arrived, four to five squad cars were present but

2

Newman was not. Sergeant Anderson knew that Newman had friends who lived on Labore Avenue, so he began driving there. As the sergeant turned into the driveway on Labore Avenue, he saw someone, who he identified as Newman, run up the back steps. He arrested Newman and while placing him in the squad car, the sergeant observed that Newman was "profusely sweating" and "[v]ery red in the face." He also noticed that Newman had a "square green cooler around his neck."

When Deputy Werdien arrived, he identified Newman as the man he had just pursued on the motorcycle. He also identified the motorcycle at the friend's home as the same one that Newman had recently been driving. Police discovered that the motorcycle had been hot-wired so that it would run without a key. Police also discovered that the motorcycle was a Suzuki and had the same VIN as a motorcycle that had recently been reported stolen in Minneapolis.

Newman was charged with theft of moveable property, theft of a motor vehicle, and fleeing a peace officer. On April 30, 2013, Newman proceeded to a jury trial. The trial ended in a mistrial after members of the jury saw a police officer, who may have been called to testify, arrest Newman in the hallway of the courthouse after Newman yelled at the officer and accused him of ruining his life.

Newman's second trial began on May 1, 2013. At noon on May 2, the jury retired for deliberations. The jury was dismissed at 4:30 p.m. that day, returning the following day at approximately 9:00 a.m. At 11:05 a.m., the jury sent a note to the district court, stating: "We the jury are deadlocked on counts one and two. Theft, theft of a motor vehicle. Additional clarification of instruction is sought regarding the interpretation of

3

the pertinent statutes." The note was read in open court with both counsel and Newman present. The district court then brought the jury into the courtroom and stated the following:

> Members of the jury, we're going to continue to ask that you work. Okay. I want to remind you, let me reread this instruction to you that I read yesterday.
> "Each of you has a duty to consult with one another and to deliberate with the view towards reaching an agreement, if you could do so. Each of you must, of course, decide the case for yourself. But only after an objective consideration of the evidence with your fellow jurors.
> No juror should hesitate to re-examine their own view or change their opinion, if they are persuaded that their opinion is wrong or inaccurate. On the other hand, no juror should surrender their honest judgment solely because of the opinions of their fellow jurors, or merely for the purpose of returning a unanimous verdict."
> So we'll send you back. Continue to work. We'll make arrangements around noon to take to you lunch. Okay. If you have any other questions you should, your foreperson could reduce that to writing, and do the same thing. Sign and date it. The right year. And then we'll deal with it. Okay. All right.

At approximately 1:00 p.m., the district court received a second note stating: "We [the] jury are unable to reach a unanimous verdict on counts 1 and 2. Theft, and theft of a motor vehicle. After repeated debate and consideration we're unable to resolve the differences in our position." The district court's law clerk contacted counsel, who both agreed that the district court could send a note back instructing the jury to continue working. The district court then sent a typed note to the jury that stated, "Keep working." Newman was not contacted nor was he present for the district court's response to the jury's second question. The district court made a subsequent record of its decision,

4

stating that it did not ask the jury and the parties to come in again because "they had just returned from lunch . . . [t]hey didn't start quite at nine. And then they went to lunch at about 11:45."

At 3:05 p.m., the jury reached a verdict. The jury found Newman guilty of theft of a motor vehicle and fleeing a peace officer. Newman was sentenced to 18 months' imprisonment for his theft-of-a-motor-vehicle conviction and 17 months for his conviction of fleeing a peace officer in a motor vehicle. This appeal follows.

## D E C I S I O N

### I. Communication with the jury outside of Newman's presence

Newman argues that the district court committed reversible error when it communicated with the jury during deliberations without Newman's knowledge or presence and without making a contemporaneous record of the communication.

"Through the Confrontation Clause, the Sixth Amendment to the United States Constitution grants a defendant the right to be present at all stages of trial." *State v. Sessions*, 621 N.W.2d 751, 755 (Minn. 2001). "Responding to a deliberating jury's question is a stage of trial." *Id.* Therefore, the general rule in Minnesota is that the district court should not communicate with the jury after deliberations have begun unless it is done in open court and in the defendant's presence. *Id.* at 755-56. The right to be present may be waived if done so "competently and intelligently." *State v. Worthy*, 583 N.W.2d 270, 277 (Minn. 1998). But the decision to waive is a personal decision for a defendant to make; it is not a decision for counsel to make. *State v. Ware*, 498 N.W.2d 454, 457 (Minn. 1993).

Here, at 11:05 a.m. on the second day of deliberations, the jury sent its first note indicating that it was deadlocked. The district court assembled Newman, the attorneys, and the jury in open court and read the note. The district court instructed the jury to continue working and that it should deliberate with the view towards reaching an agreement if possible. At about 11:45, the jury took its lunch break. At 1:00 p.m. that same day the jury sent its second note again indicating that it was deadlocked. The record reflects that after receiving the second note the district court phoned counsel, who both waived their right to be present when the district court instructed the jury. But the record does not indicate that Newman personally waived his right to be present or that he was notified of the jury's second note. The right to be present during a stage of trial is a personal one that only the defendant can waive, and Newman never waived it. *See Ware*, 498 N.W.2d at 457.

The state argues that the district court did not err because its communication to the jury related to a housekeeping matter. Our supreme court has held that "when a judge communicates in writing with the jury about a housekeeping matter, the defendant's right to be present at trial is not violated." *Ford v. State*, 690 N.W.2d 706, 713 (Minn. 2005). "Housekeeping matters" are those questions addressing matters relating to physical comforts and the like. *See State v. Kelley*, 517 N.W.2d 905, 908 (Minn. 1994); *see also Ford*, 690 N.W.2d at 713 (holding that jury's request for preservation of the deliberation materials was a housekeeping matter). But here, the district court's communication with the jury went beyond housekeeping. By instructing the jury to "keep working," the district court may have implied to the jury that it was required to deliberate until a

6

unanimous verdict was reached, which may have prejudiced Newman. *See Kelley*, 517 N.W.2d at 908-09 (concluding that reversal was warranted where the district court directed the jury to keep deliberating, sending a note that stated, "Keep working"); *Peterson v. State*, 672 N.W.2d 612, 615-16 (Minn. App. 2003) (determining that the district court erred when it instructed the jury, among other things, to "[k]eep working" when asked how long it must deliberate), *review denied* (Minn. Mar. 16, 2004). Even if the district court believed that its communication could have been categorized as either housekeeping or substantive communication, it erred by failing to resolve the issue in Newman's favor. *See Ford*, 690 N.W.2d at 713 (cautioning courts that when there is "any doubt regarding whether a communication relates to a housekeeping or substantive matter [it] should be resolved in favor of defendant's presence"). The district court therefore erred by not having Newman present or informing him of the jury's second note.

Because we have concluded that the district court improperly denied Newman the right to be present at a stage of trial, we must consider whether the district court's error was harmless. *Sessions*, 621 N.W.2d at 756. A new trial is warranted only if the error was not harmless. *Id.* An error is harmless if the verdict was surely unattributable to the error. *Id.* "When considering whether the erroneous exclusion of a defendant from judge-jury communications constitutes harmless error, we consider [1] the strength of the evidence, and [2] substance of the judge's response." *Id.* (citations omitted).

Newman was convicted of theft of a motor vehicle in violation of Minn. Stat. § 609.52, subd. 2(17) (2010), and fleeing a peace officer in a motor vehicle in violation of

7

Minn. Stat. § 609.487, subd. 3 (2010). Under section 609.52, subdivision 2(17), whoever "takes or drives a motor vehicle without the consent of the owner or an authorized agent of the owner, knowing or having reason to know that the owner or an authorized agent of the owner did not give consent" is guilty of theft of a motor vehicle. Under section 609.487, subdivision 3, a person is guilty of fleeing a peace officer when they "flee[] or attempt[] to flee a peace officer who is acting in the lawful discharge of an official duty, and the perpetrator knows or should reasonably know the same to be a peace officer."

The record contains strong evidence of Newman's guilt. The prosecutor introduced video and photographs of Newman on the motorcycle that had the VIN of a motorcycle that had been reported stolen. The owner of the motorcycle testified that he did not give Newman consent to drive the motorcycle. The prosecutor also introduced evidence indicating that the motorcycle had been hot-wired and could start without a key. Deputy Werdien testified that he saw Newman take the motorcycle out of his garage and drive it. Police surveillance video and photos depict a man on the motorcycle with a green, rectangular-shaped cooler hanging from his neck. Sergeant Anderson testified that when he arrested Newman, he had a green cooler around his neck. Additionally, Deputy Werdien testified that Newman fled when he activated his lights and siren. A video of the chase recorded from the deputy's dashboard camera was also admitted into evidence. The video shows the deputy pursuing a man on a motorcycle. The man accelerates and drives his motorcycle between a boulder and a fence before disappearing from view. Because the strength of the state's evidence was overwhelming, this factor weighs in favor of a determination that the error was harmless.

We next consider the substance of the district court's communication with the jury. Here, the district court simply wrote "[k]eep working" two hours after it had brought the jury into the courtroom and properly instructed them that they should try to reach a verdict if possible. Because this instruction repeated what had been said to the jury just two hours before, when Newman was present, we conclude that the district court's communication was not unfairly prejudicial. *See Sessions*, 621 N.W.2d at 756-57 (holding that because the district court did not issue any new instructions in its response its communication with the jury was not prejudicial). Therefore the substance of the district court's response similarly weighs in favor of a determination that the error was harmless.

Because Newman has failed to establish that the district court's error was not harmless, he is not entitled to a new trial.

## II. Sentencing

Newman argues that his sentence must be vacated because the district court imposed a harsher sentence based on his decision to stand trial. Newman sought a downward dispositional departure from the presumptive sentence based on his amenability to probation. The district court denied the motion and imposed and executed sentences at the low end of the presumptive range for both convictions, finding no substantial and compelling reasons to depart. "The standard of review of sentencing departures is whether the [district] court committed an abuse of discretion." *State v. Anderson*, 463 N.W.2d 551, 553 (Minn. App. 1990), *review denied* (Minn. Jan. 14, 1991).

"It is well established that the fact that a defendant exercises his constitutional right to trial by jury to determine his guilt or innocence must have no bearing on the sentence imposed." *State v. Mollberg*, 310 Minn. 376, 388, 246 N.W.2d 463, 471 (1976) (quotation omitted). And when reviewing an issue such as this, "the record must affirmatively show that the [district] court sentenced the defendant solely upon the facts of his case and his personal history, and not as punishment for his refusal to plead guilty." *Id.* (quoting *United States v. Stockwell*, 472 F.2d 1186, 1188 (9th Cir. 1973)).

Reading the transcript in its entirety, we conclude that the district court did not sentence Newman more harshly because of his refusal to plead guilty. As the district court noted, it was "giving him the consequences of the verdict of the jury." Although the district court discussed Newman's decision not to accept the state's plea offer, those comments were made in the context of explaining why the district court found no substantial and compelling reasons to depart. Defense counsel argued in the beginning of the sentencing hearing that the district court was to consider "what [Newman] has for criminal history, and what he's presenting through probation, and what the [c]ourt sees and observes during the course of interaction with him. How he handles himself during trial." The district court considered how Newman conducted himself during trial and determined that Newman refused to accept responsibility for his crimes even after watching a video of himself committing the offenses. The district court found that Newman's refusal to accept responsibility indicated that he would not be amenable to probation or treatment, which was what Newman sought as a downward departure.

Further, the sentence imposed by the district court was on the low end of the presumptive-sentence range. Newman's conviction of theft of a motor vehicle warranted a sentence ranging from 18 to 25 months in prison, with a "middle of the box" sentence of 21 months. The district court sentenced Newman to 18 months. The guidelines sentence for Newman's conviction of fleeing a peace officer ranged from 17 to 22 months, with a "middle of the box" sentence of 19 months. The district court sentenced Newman to 17 months—again, the low end of the presumptive sentencing range.

Because the district court sentenced Newman as a consequence of his guilt in accordance with the sentencing guidelines, we conclude that the district court acted within its discretion.

**Affirmed.**