STATE of Minnesota, Respondent,

v.

Jared Brent KREBSBACH, Appellant.

No. C0–94–1028.

Court of Appeals of Minnesota.

Nov. 15, 1994.

Review Denied Jan. 13, 1995.

**18**

Hubert H. Humphrey, III, Atty. Gen., John Docherty, Asst. Atty. Gen., St. Paul, Ross Arneson, Blue Earth County Atty., Mankato, for respondent.

John M. Stuart, State Public Defender, Bradford S. Delapena, Asst. State Public Defender St. Paul, for appellant.

Considered and decided by PARKER, P.J., and KALITOWSKI and JONES, JJ.

## OPINION

PHYLLIS G. JONES, Judge.*

Appellant Jared Brent Krebsbach alleges that the district court abused its discretion in imposing the presumptive guidelines sentence following his conviction for aiding and abetting first degree assault. He claims that he played a passive role in the assault, that his accomplices received lighter sentences, and that his first amendment rights were violated when the court considered at sentencing letters written by appellant concerning his racist beliefs. We affirm.

* Retired judge of the district court, serving as judge of the Minnesota Court of Appeals by ap-

## FACTS

Appellant, aged 21, was driving his automobile with three juveniles, M.H., C.R., and J.G, with whom he had been drinking alcoholic beverages. M.H., who had been sexually assaulted the previous week, told the others that he wanted to go to the apartment of the perpetrator of that assault, who became the victim of the crime in this case, to get revenge for the sexual assault.

Appellant drove to the building and the four of them entered. When they got to the perpetrator's apartment, the door was unlocked. They went inside the apartment but nobody was there. As they were leaving the building, they passed the target who was going toward his apartment. The three juveniles and appellant waited in the parking lot briefly and then returned to the apartment.

The four of them attacked the target, kicking and beating him. M.H. kicked the victim in the head several times, J.G. struck him with a 2 x 4, and they hit him with a lamp. Appellant also kicked and hit him. After the assault, they left the victim unconscious and went to an area behind a church. M.H. told the others he was not satisfied that he had gotten sufficient revenge and they returned to the apartment where they assaulted the victim again, kicking him in the face, torso, and genitals as he lay on the floor.

When the police arrived, they arrested J.G. at the bottom of the stairway. M.H., C.R., and appellant ran into the bathroom and shut the door. When discovered, appellant resisted arrest, pushing an officer down the hallway until she struck her back and head on a wall. After a struggle, the officer arrested appellant.

The victim nearly died from the beating. He is now in a nursing home where he is relearning how to walk and talk, and is being toilet trained. He does not recognize his family members and remembers nothing about the assault.

Appellant pleaded guilty to aiding and abetting first degree assault with no agree-

pointment pursuant to Minn. Const. art. VI, § 10.

ment as to sentencing. Appellant moved for a durational and dispositional departure, citing his age, lack of prior criminal record, his lack of leadership in the assault, and his family's support.

The state recommended an upward departure based on several factors: (1) the victim was particularly vulnerable due to reduced physical capacity when appellant and his accomplices returned for the second assault; (2) invasion of the victim's zone of privacy; (3) the victim suffered both a protracted loss of function of a bodily member and a high probability of death; and (4) appellant was the only adult and drove the others to the victim's home. The state submitted two letters written by appellant to a friend in 1993 in which appellant boasts about drinking, fighting, and spray painting racist graffiti, and challenges the recipient to fight a third person.

At sentencing, the court weighed the factors presented by both appellant and the state, including the fact that the three juvenile participants were prosecuted as adults and received a 50% reduction from the presumptive sentence through plea agreements. It also discussed appellant's letters and how they demonstrate appellant's violent character. The court imposed the presumptive guidelines sentence of 86 months, rejecting both the state's and appellant's request that it depart.

## ISSUES

1. Did the district court act within its discretion when it imposed the presumptive guidelines sentence of 86 months?

2. Did the district court violate appellant's first amendment rights when it considered appellant's letters concerning his racist beliefs in determining appellant's sentence?

## ANALYSIS

■ The supreme court has repeatedly stated that, because the trial court is in the best position to determine whether circumstances warrant departure, reviewing courts will not ordinarily interfere with a presumptive sentence, even if there are grounds to justify departure. *See, e.g., State v. Wall,* 343 N.W.2d 22, 25 (Minn.1984).

> [I]t would be a rare case which would warrant reversal of the refusal to depart * * *. [T]he Guidelines state that when substantial and compelling circumstances are present, the judge "may" depart. This means that the trial court has broad discretion and that we generally will not interfere with the exercise of that discretion.

*State v. Kindem,* 313 N.W.2d 6, 7 (Minn. 1981); *see also State v. McKissic,* 415 N.W.2d 341, 345 (Minn.App.1987) (a review of case law reveals only one case in which an appellate court disturbed a presumptive sentence).

■ Appellant asserts that the district court should have departed downward because equity in sentencing favored a downward departure, and because the court recognized that appellant played a relatively minor role in the assault. We disagree. Although the district court acknowledged that appellant presented a credible case for departure, we cannot say it abused its discretion in imposing the presumptive sentence given the fact that appellant was the only adult participant and that he twice drove the others to the victim's home to commit the assaults.

"A defendant is not entitled to a reduction in his sentence merely because a co-defendant or accomplice * * * received a lesser sentence." *State v. Starnes,* 396 N.W.2d 676, 681 (Minn.App.1986). The court properly balanced mitigating factors with aggravating factors and determined that the presumptive sentence was appropriate:

> If one reviews the case law, both sides made a presentation that is supportive of departure. However, premised on my review, I am rejecting the request of both of the parties.

*See State v. Olson,* 459 N.W.2d 711, 716 (Minn.App.1990), *pet. for rev. denied* (Minn. Oct. 25, 1990) (mitigating factors were counterbalanced by aggravating factors, justifying the presumptive sentence).

■ Appellant also claims that the trial court improperly considered his political beliefs in determining his sentence. The state submitted two letters to the court in which

appellant boasted about his fighting and drinking activities, referred to membership with "skinheads," and claimed responsibility for racist graffiti. Appellant asserts that, in considering his association with "skinheads," the district court violated his first amendment rights. In support of this argument, appellant cites *Dawson v. Delaware*, 503 U.S. 159, 112 S.Ct. 1093, 117 L.Ed.2d 309 (1992).

In *Dawson*, during his capital sentencing hearing, Dawson introduced mitigating evidence based on his kindness to family members and the fact that he earned good time credits in prison. *Id.* at ——, 112 S.Ct. at 1096. The prosecution presented evidence that the defendant was a member of the Aryan Brotherhood, a white racist prison gang. *Id.*

After being sentenced to death, Dawson appealed claiming that the admission of the Aryan Brotherhood evidence violated his first amendment rights. *Id.* The United States Supreme Court announced that

> the Constitution does not erect a *per se* barrier to the admission of evidence concerning one's beliefs and associations at sentencing simply because those beliefs and associations are protected by the First Amendment.

*Id.* at ——, 112 S.Ct. at 1097. Nevertheless, the court held that, because the Aryan Brotherhood evidence was so narrow, it was totally without relevance to Dawson's sentencing proceeding and its admission violated Dawson's constitutional rights. *Id.* The court explained that had the evidence been broader and shown bad conduct or character rather than mere abstract beliefs, it may have been relevant to prove aggravating circumstances or to rebut mitigating circumstances. *Id.* at ——, 112 S.Ct. at 1098–99.

Unlike the evidence in *Dawson*, appellant's letters do more than show mere abstract beliefs or membership in a group. They show that appellant has a violent character and is proud of his criminal acts:

> I'm just hanging out down here in Atlanta drinking and fighting * * * I heard you and Dillon got in a fight. When I come

back up there in a few months I want to see you beat Dillon up.

>     *     *     *     *     *     *

> They had a special report on the news down here about neo-nazi skinheads in Atlanta. They talked about the increase in numbers and increase of racist graffiti which I've been responsible for. One night I was so drunk I blacked out and then I remember spraypainting on some wall. Then I blacked out again and I was spraypainting some S.H.A.R.P.'s house and their scooter.

■ Appellant's letters were relevant to rebut the evidence of good character presented by appellant in support of his request for a dispositional departure. *See State v. Schenk*, 427 N.W.2d 12, 13 (Minn.App.1988) (in determining dispositional departure, factors considered by court generally reflect on a defendant's character). The court discussed the incongruity between appellant's letters and the voluminous letters from appellant's family and friends stating that appellant is a good man who was led astray by influences of bad companions, drugs, and alcohol:

> I've seen the two letters that [appellant] wrote to his young friend, and they obviously paint a radically different picture in contrast to the letters I've seen from all of his family.
>
> Those letters show me a young man who has essentially rejected his heritage by adopting a skinhead lifestyle, who has bragged, whether he did it or he didn't, but he bragged about exploits of violence and his association with what I would feel to be some of the vilest of groups.
>
> I'm not talking about his philosophies. I'm talking about the conversion of those philosophies into physical action against other people. That's what I'm concerned with.

The court's reasoning demonstrates that it did not consider appellant's political beliefs abstractly but rather considered them in connection with his admitted propensity for violence. This evidence of appellant's bad character meets the relevancy requirement articulated by the supreme court in *Dawson*. Accordingly, the district court did not err in

considering the evidence when it imposed the presumptive sentence.

## DECISION

The district court did not err in imposing the presumptive guidelines sentence after balancing mitigating and aggravating factors. The court properly considered the letters written by appellant which showed his violent character because they were relevant to rebut appellant's evidence of good character.

**Affirmed.**