**STATE of Minnesota, Respondent,**

v.

**Rosemary CHARLES, Appellant.**

**No. C9–00–1636.**

Court of Appeals of Minnesota.

Sept. 25, 2001.

Mike Hatch, Attorney General, and Susan Gaertner, Ramsey County Attorney, Jeanne L. Schleh, Assistant County Attorney, St. Paul, MN, for respondent.

John M. Stuart, State Public Defender, Rochelle R. Winn, Assistant State Public Defender, Minneapolis, MN, for appellant.

Considered and decided by RANDALL, Presiding J., STONEBURNER and HUSPENI, JJ.*

## OPINION

RANDALL, Judge

In this appeal from a conviction for second-degree felony murder, appellant argues that the district court (1) committed plain error by failing to instruct the jury on the intent element of second-degree assault; (2) erred by excluding evidence of the victim's prior assaults against others; (3) committed reversible error by communicating with the jury during deliberations outside of open court in appellant's absence and without making a contemporaneous record; and (4) committed plain error by failing to instruct the jury on defense of dwelling. Lastly, appellant argues that she was denied effective assistance of counsel because her attorney failed to request a defense of dwelling instruction. We reverse and remand.

---

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

## FACTS

At approximately 10:15 p.m. on July 29, 1999, St. Paul police and paramedics responded to a 911 call from a home in St. Paul. When they arrived, they found R.T. unconscious and bleeding from a chest wound. R.T. died at the scene. Upon questioning the two witnesses present, police learned that R.T.'s girlfriend, appellant Rosemary Charles, had stabbed him with a knife. Charles was found upstairs in her bedroom on the far side of the bed in a fetal position. Also found in the bedroom were a butcher block of knives hidden under a cloth-covered table and two knives on the floor.[1] Charles was taken into custody and charged with second-degree felony murder. The complaint was subsequently amended to include a charge of second-degree intentional murder.

At trial, Charles asserted self-defense, claiming that she did not intend to cause R.T.'s death. She testified that she had awoken that evening to R.T. open-handedly hitting her on the head and that she screamed at him to stop. She further testified that she was holding one of the knives when her roommate, Susan Niebeling, entered the room and tried to intervene. Niebeling ordered her to drop the knife. Charles complied. She testified that she tried to leave the room but that R.T. stopped her and continued to hit her causing her to fall to the floor. Charles claimed that R.T. continued to swing at her while she was on the floor and it was at that time that she picked up the knife, which she had previously dropped, and stabbed him.

During deliberations, the jury made several requests. Specifically, on May 18, 2000, the jury requested clarification of the jury instructions and a legal definition of assault. The court's response provided clarification of the instructions but did not include a definition of assault, the predicate felony. On May 19, 2000, the jury indicated that deliberations were stalled at an eleven-to-one vote on both counts. The jury requested that the court provide options or suggestions and clarification of the law on self-defense. The court directed the jury to refer to the instructions as a whole, particularly CRIMJIG 3.04. Lastly, on May 20, 2000, the jury asked to review an audiotape and videotape that had been entered into evidence. The request was granted.

In each instance, the court consulted with the attorneys before responding. They agreed that the court would respond to each request with a handwritten note as opposed to calling the jury into the courtroom. The court made a contemporaneous record of the May 19 discussion but only documented the substance of the May 18 and May 20 discussions in the record after the fact. Charles was not present at any of the discussions.

The jury found Charles guilty of second-degree felony murder. She was sentenced to 150 months in prison. This appeal follows.

## ISSUES

1. Did the district court err by failing to instruct the jury on the intent element of second-degree assault, the predicate felony?

2. Did the district court err by excluding evidence of the victim's prior assaults against others?

3. Did the district court err by communicating with the jury during deliberations outside of open court in appellant's ab-

---

1. Charles testified that she had brought the butcher block into her bedroom because earlier that day she had been involved in a physi-cal altercation with her roommate's sister. Charles feared that the woman might return and attack her.

sence and without making a contemporaneous record?

4. Did the district court err by failing to instruct the jury on defense of dwelling?

5. Did appellant's attorney render ineffective assistance of counsel by failing to request a defense of dwelling instruction?

## ANALYSIS

### I. Intent Element of Second–Degree Assault

Charles argues that she is entitled to a new trial because the district court failed to instruct the jury on the intent element of second-degree assault, the predicate felony of the felony-murder charge for which she was convicted. Charles asserts that the felony-murder instructions require that the jury be instructed on the underlying felony. She points out that the jury requested a legal definition of assault but was not given one. She contends that while it is not clear whether defense counsel objected to the district court's failure to give a definition of assault, it is plain error for the court not to provide the requested definition, and that error warrants a new trial. We agree.

■ "[J]ury instructions must be viewed in their entirety to determine whether they fairly and adequately explain the law of the case." *State v. Flores*, 418 N.W.2d 150, 155 (Minn.1988) (citation omitted). Even if there was no objection to the instructions, where there is plain error affecting an individual's substantial rights an appellate court must assess whether addressing the error will ensure fairness and integrity of the judicial proceedings. *State v. Griller*, 583 N.W.2d 736, 740 (Minn.1998).

■ To be convicted of second-degree felony murder, the defendant must have committed a specified predicate felony that resulted in the death of another. Minn. Stat. § 609.19, subd. 2(1) (1998). While the state is not required to prove that the defendant intended to effect the death of the victim, it must prove that the defendant committed the predicate felony. *State v. Cole*, 542 N.W.2d 43, 51 (Minn. 1996). Thus, the jury instructions for felony murder direct the court to include the appropriate definition of the predicate felony in its instructions to the jury. 10 *Minnesota Practice*, CRIMJIG 11.30 (1999).

■ In this case, the predicate felony is second-degree assault. The district court included in its jury instructions the following definition of second-degree assault: "whoever assaults another with a dangerous weapon is guilty of assault in the second degree." Although this definition is in accordance with 10 *Minnesota Practice*, CRIMJIG 13.09 (1999), caselaw indicates that where second-degree felony murder is charged and the underlying felony is assault, it is necessary to prove that the defendant *intended* to commit the assault. *See State v. Branson*, 487 N.W.2d 880, 884 (Minn.1992) (commenting that felony-murder rule provides for imputing malice to accidental killing, not imputing act of killing); *State v. Gorman*, 532 N.W.2d 229, 233 (Minn.App.1995) (stating that to establish felony murder, state must prove defendant intended to assault victim), *aff'd on other grounds*, 546 N.W.2d 5 (Minn.1996); *State v. Werman*, 388 N.W.2d 748, 750 (Minn.App.1986) (stating conviction for felony murder with underlying felony of second-degree assault requires finding of intent to assault), *review denied* (Minn. Aug. 13, 1986). Intent is an essential element of the definition of assault. Minn.Stat. § 609.02, subd. 10 (1998); 10 *Minnesota Practice*, CRIMJIG 13.01 (1999).

■ It is evident that the definition of second-degree assault provided by the court in this case was insufficient. During deliberations the jury requested a legal definition of assault. In response to this request the court only directed the jury to refer to the original instructions, which did not include the definition of "assault," but rather that assaulting someone with a dangerous weapon is a crime. The district court should have instructed the jury that:

> [W]hoever does an act with intent to cause fear in another person of immediate bodily harm or death, or intentionally inflicts or attempts to inflict bodily harm upon another, is guilty of [assault].

10 *Minnesota Practice*, CRIMJIG 13.01 (1999).

Because the state was required to prove that appellant committed the predicate felony, the district court should have instructed the jury on all essential elements of second-degree assault as found in 10 *Minnesota Practice*, CRIMJIG 13.10 (1999). Because the district court failed to fully instruct the jury, we find that the court committed plain error.

■ A finding of plain error requires the court to examine whether addressing the error will "ensure fairness and the integrity of the judicial proceedings." *Griller*, 583 N.W.2d at 740 (citation omitted). Whether Charles intended to inflict bodily harm was an issue debated at trial and a focus of the state's cross-examination. The jury was instructed on the intent element of intentional murder in the second-degree but acquitted Charles because it found she did not have the requisite intent. We can infer there is a reasonable likelihood that failure to instruct the jury on the intent element of assault had a substantial impact on how they viewed the evidence in conjunction with the court's instructions that were given.

■ The district court committed plain error by not instructing the jury on the definition of assault and the complete elements of second-degree assault. That omission may have resulted in an unfair verdict. Accordingly, Charles is entitled to a new trial. We conclude that, as a matter of law, in a felony murder case where the state is required to prove that the defendant committed an underlying felony, the district court must instruct the jury on all the elements and relevant definitions of the underlying felony, in addition to the crime charged.

## II. Exclusion of Victim's Other-Crimes Evidence

Charles contends that the district court abused its discretion when it excluded evidence of seven prior acts of violence allegedly committed by R.T. against his ex-wife, former girlfriends, and an acquaintance. Police reports indicate that these prior bad acts, involving assaults and terroristic threats, occurred between 1990 and 1994. Charles argues that such evidence is admissible to establish R.T.'s intent to cause her bodily harm and her state of mind at the time of the stabbing.

■ Evidence of specific crimes or bad acts is not admissible to prove that a person acted in conformity therewith on a particular occasion but may be admissible for other purposes, such as to establish "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Minn. R. Evid. 404(b). In addition, when a defendant claims self-defense, evidence of the victim's prior specific crimes and bad acts may be admissible to show that the defendant had a reasonable apprehension of serious bodily harm provided that the defendant was aware of the victim's prior violent behavior. *State v. Bland*, 337 N.W.2d 378, 382 (Minn.1983).

Since *this* is not the circumstantial use of character evidence to prove *conduct,* such use is not barred either by Rule 404 or by Rule 405.

*Id.* at 383 (quotation omitted).

■■■ Here, Charles claimed that she had known R.T. for over a year and that during that time he had bragged extensively to her about these incidents and essentially used them as a means of keeping Charles in line. The state "speculated" that Charles was not aware of R.T.'s violent history at the time of the stabbing, reasoning that if R.T.'s reputation for violence against others affected her state of mind and ultimately her response to R.T.'s assault, then she would have mentioned that to the investigating officers during the interrogation. The district court ruled in favor of the state, finding that Charles's claims were insufficient to establish that she had knowledge of R.T.'s violent history. Thus, the court concluded that R.T.'s seven prior bad acts were inadmissible to show that Charles had reasonable apprehension of physical harm.

We disagree with the district court's decision. The state presented no evidence to contradict Charles's claim that she was aware of R.T.'s prior violent behavior towards others. The state only speculated, with no foundation, that Charles was lying and had only learned about R.T.'s violent record from police reports after the fact. Accordingly, the district court should have admitted the evidence and allowed the jury to determine the credibility of Charles's claims. *See State v. Pilot,* 595 N.W.2d 511, 516 (Minn.1999) (stating that it is jury's province to determine witness credibility). While the court's exclusion of the evidence, standing alone, does not amount to reversible error, it is a contributing factor in our conclusion that Charles was denied a fair trial.

We are puzzled by the state's contention that evidence of the victim's prior bad acts and episodes of violence were not relevant. Had the victim been charged with killing Charles, the state would have labored mightily to get every single one of those prior bad acts into evidence, as Spreigl evidence, and would have argued at length promoting their relevancy and probative value.

### III. Court's Out-of-Court Communications with Jury During Deliberations

■■■ Charles contends that the district court committed reversible error by communicating with the jury during deliberations outside of open court in her absence and without making a contemporaneous record. Under the United States Constitution, a criminal defendant has the right to be present at every critical stage of the criminal proceedings. *State v. Grey,* 256 N.W.2d 74, 76 (Minn.1977). Minnesota provides a broader right by requiring that a defendant be present at "every stage of the trial." Minn. R.Crim. P. 26.03, subd. 1(1). The general rule is that any communications between the court and the jury after deliberations have begun should take place "in open court and in the defendant's presence." *State v. Sessions,* 621 N.W.2d 751, 755–56 (Minn.2001) (citation omitted).

■■■ Charles was not present during any of the discussions between the court and the attorneys regarding the court's responses to the jury's various requests. Charles's attorney made a unilateral decision that Charles's presence was not necessary. Although the right to be present may be waived, the decision to waive is personal and is not one for counsel to make but one for the defendant to make after consultation with counsel. *Ware,* 498 N.W.2d at 457. The district

court erred in accepting defense counsel's statement that Charles's presence was not necessary. If defense counsel asserts that the defendant's presence is not necessary during any stage of the trial, it should be the practice of the court to make a contemporaneous record and directly question the attorney about whether the defendant has been fully apprised of the right to be present. The district court must ensure that the defendant's waiver of the right to be present was made voluntarily after consultation with counsel and a record of the waiver must be made. It is the better practice in this situation for the defendant to complete the record, at some point, by affirming the attorney's decision to waive his presence.

■■■ The jury "shall be conducted to the courtroom" upon its request to review evidence or be informed on any point of law. Minn. R.Crim. P. 26.03, subd. 19(2), (3). This provision is mandatory and "does not depend on the form or the substance of the court's response." *Sessions*, 621 N.W.2d at 756. Here, the district court did not call the jury to the courtroom and instead responded to its request in writing, and again there is an absence of a waiver from Charles. *See* Minn. R.Crim. P. 26.03, subd. 19(2), (3).

■■■ Finally, Charles argues that the district court erred by not making contemporaneous records of all of its communications with the attorneys and jury. The supreme court has cautioned district courts that a contemporaneous record must be made at each stage of trial with an emphasis on communications between the court and the jury during deliberations. *Sessions*, 621 N.W.2d at 756. The district court should have created a contemporaneous record of its discussions with the attorneys during jury deliberations on May 18 and May 20.

While we do not rest our decision to reverse solely on these out-of-court communication issues, they contribute to the bundle of errors leading us to the conclusion that Charles is entitled to a new trial.

## IV. Failure to Give Defense of Dwelling Instruction

Charles argues that the district court committed plain error by failing to give the jury an instruction on defense of dwelling. The district court instructed the jury on self-defense using CRIMJIG 7.06. Charles argues that the court erred by not further instructing the jury on defense of dwelling contained in CRIMJIG 7.05. The record indicates that the jury instructions were discussed at length and that both attorneys were in full agreement on the final version.

■■■ Generally, a defendant's failure to either propose or object to instructions before they are given to the jury constitutes a waiver of the right to appeal. *State v. Cross*, 577 N.W.2d 721, 726 (Minn. 1998). If, however, there is plain error affecting substantial rights, then this court has the discretion to consider the unobjected-to error on appeal and consider whether it should address the error to "ensure fairness and the integrity of the judicial proceedings." *Griller*, 583 N.W.2d at 740 (citation omitted). Although the details of this case suggest that a defense of dwelling instruction would have been justified, the district court did not commit plain error by choosing to only instruct the jury on self-defense under CRIMJIG 7.06.

## V. Ineffective Assistance of Counsel

■■■ Charles claims that her attorney rendered ineffective assistance of counsel by failing to request a defense of dwelling instruction. She argues that had the jury been instructed on this defense, there is a reasonable probability that she would have

been acquitted. After a careful search of the record, we conclude that Charles's claim of ineffective assistance of counsel is without merit.

## DECISION

After careful review, we conclude that the district court's failure to instruct the jury on the elements of second-degree assault and its failure to provide a legal definition of assault were plain error that potentially affected the jury's verdict. Accordingly, appellant is entitled to a new trial. The district court also erred by excluding the victim's prior violent acts against others and communicating with the jury during deliberations outside of open court in Charles's absence and without making a contemporaneous record of the communications. Finally, although we find that the facts of the case would have justified jury instructions including defense of dwelling, we do not find a plain error in the district court's choice of CRIMJIG 7.06.

**Reversed and remanded.**