STATE of Minnesota, Respondent,

v.

James Warren MOON, Jr., Appellant.

No. A05–1047.

Court of Appeals of Minnesota.

July 18, 2006.

John M. Stuart, State Public Defender, Susan J. Andrews, Assistant State Public Defender, Minneapolis, MN, for appellant.

Mike Hatch, Attorney General, Tibor M. Gallo, Assistant Attorney General, St. Paul, MN; and Donald F. Ryan, Crow Wing County Attorney, Brainerd, MN, for respondent.

Considered and decided by STONEBURNER, Presiding Judge; WRIGHT, Judge; and DIETZEN, Judge.

## OPINION

WRIGHT, Judge.

Appellant challenges his conviction of intentional second-degree murder and sentence of 306 months' imprisonment, arguing that (1) the district court erred by failing to instruct the jury regarding accomplice testimony, and (2) the interests of justice require a reduction in his sentence. In his pro se supplemental brief, appellant argues that he received ineffective assistance of counsel, the prosecutor committed prejudicial misconduct, the search warrants for his car and residence were defective, and there was insufficient evidence to support the conviction. We affirm.

## FACTS

On March 7, 2002, human remains were found in Kanabec County and identified through fingerprints as Billie Joe Moon. An autopsy concluded that the cause of death was a gunshot wound to the head. Investigators learned that the deceased had been reported missing and was last seen on February 16, 2002, after being dropped off at a bar in Brainerd where he met his brother, appellant James Warren Moon, Jr. (Moon).

On March 8, investigators interviewed Moon regarding his brother's death. Moon stated that he and his brother had been together at the bar and that Moon later dropped off his brother in a parking lot. Upon request, Moon signed a written consent allowing the investigators to search his vehicle. When the investigators observed what appeared to be blood in the trunk, they decided to seal the vehicle and obtain a search warrant. The investigators executed a search warrant for Moon's vehicle on March 9. The DNA profile of blood-stain samples obtained from Moon's vehicle matched the DNA profile of the deceased.

Moon spoke with investigators again on March 10. At the outset, an investigator read Moon the *Miranda* warning. After a mid-morning break, Moon was placed under arrest and reminded of his *Miranda*

rights. Moon eventually admitted that he shot his brother, stating, "I pulled the trigger." Moon showed the investigators the secluded area where the shooting occurred and told the investigators where he had obtained the gun and the gun's location. Based on the information Moon provided, the investigators obtained a search warrant for Moon's residence, where they recovered the gun. Ballistics tests confirmed that a bullet found near the deceased's remains was fired from the gun seized from Moon's residence.

A grand jury indicted Moon for premeditated first-degree murder, a violation of Minn.Stat. § 609.185(1) (2000). Michael Long also was charged in connection with the murder. Long and Moon's sister were living with Moon at the time of the shooting. Under a plea agreement, Long agreed to plead guilty to aiding a felon and to cooperate in the prosecution of Moon. During an investigative interview, Long stated that he gave Moon the gun on February 16 and subsequently met Moon in the secluded area after Moon called to request a car battery. Long admitted being present when the shooting occurred and helping Moon transport the body to Kanabec County.

On May 9, 2003, Moon moved to dismiss the charge for lack of probable cause and to suppress evidence and statements obtained in violation of the Fourth and Fifth Amendments to the United States Constitution. An omnibus hearing was held on June 25. Moon later moved to reopen the omnibus hearing because he was not satisfied that his attorney had addressed every issue. The district court granted the motion to reopen the omnibus hearing but limited the issues Moon could address at the hearing and permitted briefing on the remaining issues. The second omnibus hearing was held on January 14, 2004. The district court denied Moon's motions to dismiss and to suppress and a subsequently filed motion to reopen the omnibus hearing.

At trial, Long testified that, after he handed Moon the gun, Moon held his brother down and placed the gun to his brother's head. The gun then "went off." Moon testified that he did not intend to kill his brother. Moon admitted holding his brother down and putting the gun to his brother's head. But according to Moon, Long grabbed the gun. When Long handed the gun back to Moon, it "went off." Moon testified that the gun was not in his "possession" or "direct control" when the shooting occurred.

The jury found Moon not guilty of first-degree murder, but guilty of second-degree murder, a lesser-included offense. *See* Minn.Stat. § 609.19, subd. 1(1) (2000) (causing the death of another with the intent to effect death). The district court imposed the presumptive guidelines sentence of 306 months' imprisonment. This appeal followed.

## ISSUES

I. Did the district court commit reversible error by failing to instruct the jury regarding accomplice testimony?

II. Do the interests of justice require a reduction in the sentence imposed?

III. Is appellant entitled to relief based on any of the issues raised in his pro se supplemental brief?

## ANALYSIS

### I.

■ The district court must give a jury instruction regarding accomplice testimony in a criminal trial during which a witness testifying against the defendant might reasonably be considered an accomplice to the crime. *State v. Shoop*, 441

N.W.2d 475, 479 (Minn.1989). Under these circumstances, the district court's duty to give the accomplice-testimony instruction exists regardless of whether the defense requests the instruction. *State v. Strommen,* 648 N.W.2d 681, 689 (Minn. 2002); *Shoop,* 441 N.W.2d at 479. This instruction cautions the jury that it cannot convict the defendant based on accomplice testimony unless the testimony is corroborated by other evidence that tends to establish that the defendant committed the charged offense. Minn.Stat. § 634.04 (2004); 10 *Minnesota Practice,* CRIMJIG 3.18 (1999).

 This corroboration requirement addresses the questionable credibility of testimony by an individual who may be inclined to shift the responsibility for criminal conduct to another in order to benefit personally. *State v. Azzone,* 271 Minn. 166, 170, 135 N.W.2d 488, 493 (1965). Corroborative evidence that "merely shows the commission of the offense or the circumstances thereof" provides an insufficient basis to credit accomplice testimony. Minn.Stat. § 634.04. Rather, corroborative evidence is sufficient to support a conviction based on accomplice testimony when it confirms the veracity of the accomplice's testimony and indicates the defendant's guilt in a substantial way. *State v. Hooper,* 620 N.W.2d 31, 39 (Minn.2000). Independent proof of each element of the crime, however, is not required. *State v. Lemire,* 315 N.W.2d 606, 610 (Minn.1982).

 Moon argues that the district court committed reversible error when it failed to give the accomplice-testimony instruction, even though Moon did not request the instruction. Ordinarily, to obtain reversal for an unobjected-to error, a defendant must establish that the error was plain and affected substantial rights. *State v. Griller,* 583 N.W.2d 736, 740 (Minn.1998); *see* Minn. R.Crim. P. 31.02

(providing that plain error affecting substantial rights may be considered although not argued to district court). The plain-error rule places a higher burden on a defendant seeking reversal after having failed to object or argue the matter before the district court. But this higher burden is not appropriate for a defendant who fails to request an instruction that the district court is obligated to give. Because it is the district court's obligation to give the accomplice-testimony instruction whenever a witness against the defendant might reasonably be considered an accomplice, the erroneous omission of the instruction is properly reviewed under a harmless-error analysis, even when the defendant did not request the instruction or object to its omission. *See State v. Lee,* 683 N.W.2d 309, 316 (Minn.2004) (applying harmless-error analysis to erroneous omission of accomplice-testimony instruction without specifying whether defendant requested instruction).

 An accomplice is one who could be indicted and convicted of the same crime as the defendant. *Id.* at 314. Here, the state does not dispute, and the record establishes, that Long was an accomplice. Thus, applying the harmless-error standard, we consider whether the district court's "erroneous omission of the [accomplice-testimony] instruction might have prompted the jury, which is presumed to be reasonable, to reach a harsher verdict than it might have otherwise reached...." *Shoop,* 441 N.W.2d at 481. If so, Moon is entitled to a new trial. *Id.* "Alternatively, if we conclude beyond a reasonable doubt that the omission did not have a significant impact on the verdict, reversal is not warranted." *Id.*

Moon maintains that the conviction should be reversed because it likely was based on the jury crediting Long's testimony over Moon's. But from our careful

review of the record, we conclude that, even without Long's testimony, there is more than sufficient evidence to convict Moon of intentional second-degree murder. An investigator testified that Moon admitted shooting his brother. Moon testified that he obtained a gun and ammunition, received instructions on how to operate the gun, drove his brother to a secluded area, held his brother down, and put a gun to his brother's head. Moreover, the forensic evidence received at trial was consistent with an intentional shooting. This evidence established that the deceased suffered a contact wound, which indicates that the gun was touching or nearly touching the left temple when the shot was fired. The bullet exited the right temple and was found partially embedded in the ground, indicating that the gun was fired downward at approximately a 90–degree angle.

We conclude that Long's testimony was more than sufficiently corroborated by the forensic evidence and by Moon's testimony. At the outset of his testimony, Long acknowledged that he had been charged with a crime in connection with the shooting, that he had pleaded guilty to aiding a felon, and that he had agreed to give a statement to the investigators and to cooperate with the investigation and prosecution of Moon as part of his plea agreement. Long testified that Moon tripped his brother to get him on his back and then asked for the gun. According to Long, he handed the gun to Moon who then asked his brother if he would "leave [them] alone." When Moon's brother did not respond, Moon shot him. Moon did not testify that Long pulled the trigger; yet Moon also failed to explain during his testimony how the gun went off. Moon, however, had told the investigator during questioning that he pulled the trigger. When taken as a whole, the evidence, including Moon's testimony, more than sufficiently corroborates Long's testimony that

Moon pulled the trigger. *See State v. Adams,* 295 N.W.2d 527, 533 (Minn.1980) (stating that inadequacies and admissions in defendant's testimony may sufficiently corroborate accomplice testimony).

Finally, Moon's argument that Long's testimony regarding Moon's intent warrants reversal is unavailing. Indeed, Long testified that he was not certain that the shooting was intentional. And Long's testimony that, on an earlier occasion, Moon had pointed out the secluded location where he intended to take his brother was stricken with instructions to the jury to disregard it. We are satisfied that the jury disregarded the statement in light of Moon's acquittal of premeditated first-degree murder.

Applying the harmless-error standard here, the record establishes beyond a reasonable doubt that the omission of the accomplice-testimony instruction did not have a significant impact on the verdict. Reversal on this basis, therefore, is not warranted.

## II.

Moon seeks a reduction in his sentence from 306 months, the presumptive guidelines sentence for intentional second-degree murder, to 150 months, the presumptive guidelines sentence for unintentional second-degree murder (felony murder). Moon did not move the district court for a downward durational departure from the sentencing guidelines. On appeal, we "may review the sentence imposed or stayed to determine whether the sentence is inconsistent with statutory requirements, unreasonable, inappropriate, excessive, unjustifiably disparate, or not warranted by the findings of fact issued by the district court." Minn.Stat. § 244.11, subd. 2(b) (2004).

Only in a "rare" case will we reverse a district court's imposition of the presumptive guidelines sentence. *State v. Kindem*, 313 N.W.2d 6, 7 (Minn.1981). Indeed, the district court must impose the presumptive guidelines sentence unless "substantial and compelling circumstances" warrant a downward departure. *Id.;* Minn. Sent. Guidelines II.D. Even if a mitigating factor is present, the decision whether to depart from the sentencing guidelines rests within the district court's discretion and will not be reversed absent a clear abuse of that discretion. *State v. Oberg*, 627 N.W.2d 721, 724 (Minn.App. 2001), *review denied* (Minn. Aug. 22, 2001).

Moon argues that his sentence must be reduced in the interests of justice because both he and Long participated in the attack and their sentences are unjustifiably disparate. But Long's sentence is not in the record before us. And even if the sentences are disparate, a defendant is not entitled to a sentence reduction simply because a codefendant received a lesser sentence. *State v. Krebsbach*, 524 N.W.2d 17, 19 (Minn.App.1994), *review denied* (Minn. Jan. 13, 1995).

Moon fails to present substantial and compelling circumstances supporting a downward departure. Moon was not a participant who merely aided the commission of the offense. *See State v. Burton*, 507 N.W.2d 842 (Minn.1993) (reducing a sentence because the jury could have concluded that defendant merely aided the assault). Rather, Moon orchestrated and committed the offense. Long had never met the deceased before the day of the shooting and was at the scene only because Moon called Long and asked him to bring a car battery. Long clearly participated in the events leading up to the shooting. But it was Moon who asked for the gun, both earlier in the day and immediately before the shooting; it was Moon who drove his brother to a secluded location; and it was Moon who shot his brother. Because Moon fails to establish that the district court abused its discretion, we will not interfere with the district court's sentencing decision.

### III.

Moon also raises a number of issues in his pro se supplemental brief.

### A.

Moon first argues that each of his three attorneys provided ineffective assistance of counsel. Moon's allegations on this issue are based on actions or inaction of his attorneys that we cannot evaluate on the record before us. Because we cannot determine the claims of ineffective assistance of counsel in this appeal, the claims are not barred and may be addressed in postconviction proceedings in which the record can be more fully developed. *See Robinson v. State*, 567 N.W.2d 491, 494–95 (Minn.1997) (stating that claims for ineffective assistance of counsel may be raised in postconviction proceedings after direct appeal if additional fact-finding is required).

### B.

Moon next argues that the district court erred when it excused a prospective juror for cause. On this issue, we consider whether the district court erred in concluding that the juror could not be impartial. *State v. Logan*, 535 N.W.2d 320, 323 (Minn.1995); *see* Minn. R.Crim. P. 26.02, subd. 5(1) (stating that prospective juror may be challenged for cause if state of mind indicates prospective juror cannot try the case impartially and without prejudice to challenging party's substantial rights). We accord special deference to the district court's determination of whether the prospective juror's assertion of impartiality can be believed because the dis-

trict court is in the best position to assess the prospective juror's credibility and demeanor. *Logan,* 535 N.W.2d at 323. Moon did not object to the state's motion to strike. Therefore, he can obtain relief only if the district court's decision to excuse the prospective juror constitutes plain error that affected his substantial rights. *Griller,* 583 N.W.2d at 740.

The record establishes that the prospective juror stated that she had been a victim of sexual assault. She also stated that jury service would cause her to be late for work, to possibly suffer an economic hardship, and to have less than her normal amount of time for sleep because she worked the night shift. Although the prospective juror stated that none of this would affect her ability to serve, both the state and defense counsel expressed doubts. The prospective juror's history of sexual assault was a concern to the attorneys because they anticipated that allegations that the deceased had sexually assaulted his sister would be raised at trial. Our review of the record leads us to conclude that there was an adequate basis for the state to challenge this prospective juror for cause and for the district court to disbelieve her claim that she could be impartial. Because Moon fails to establish that the district court erred by excusing the prospective juror or that striking the prospective juror affected his substantial rights, this argument fails.

## C.

Moon next alleges that the prosecutor engaged in prejudicial misconduct and failed to disclose witness statements before trial. In reviewing claims of prosecutorial misconduct, we "will reverse only if the misconduct, when considered in light of the whole trial, impaired the defendant's right to a fair trial." *State v. Powers,* 654 N.W.2d 667, 678 (Minn.2003).

Even serious misconduct will be found "harmless beyond a reasonable doubt if the verdict rendered was surely unattributable to the error." *State v. Hunt,* 615 N.W.2d 294, 302 (Minn.2000). Generally, relief will be granted for discovery violations only if the defendant was prejudiced by the state's conduct. *State v. Adams,* 555 N.W.2d 310, 311 (Minn.App.1996).

In a criminal prosecution, the state has a continuing obligation to disclose to the defense all matters within its possession or control that relate to the case. Minn. R.Crim. P. 9.01, subd. 1; Minn. R.Crim. P. 9.03, subd. 2; *State v. Kaiser,* 486 N.W.2d 384, 387 (Minn.1992). If a party fails to comply with a discovery rule, the district court may order disclosure, grant a continuance, or enter any order it deems just. Minn. R.Crim. P. 9.03, subd. 8. The district court has broad discretion to determine the appropriate remedy for a discovery violation after considering why disclosure was not made, the extent of prejudice to the opposing party, the feasibility of rectifying any prejudice with a continuance, and other relevant factors. *State v. Lindsey,* 284 N.W.2d 368, 373 (Minn.1979). We review a district court's response to discovery violations in light of these factors, and we will not reverse absent a clear abuse of discretion. *Id.*

One of the statements at issue here was made by a Ms. Hamann. Because the district court suppressed the statement on evidentiary grounds, it was never introduced at trial. Thus, the alleged discovery violation as to the Hamann statement is moot. But Moon also argues that the state committed prosecutorial misconduct by failing to disclose Long's statement that, on an earlier occasion, Moon had pointed out the location where he intended to take his brother. Moon objected to Long's testimony regarding this matter

and moved for dismissal. After a recess, the prosecutor produced an office memo that indicated that the state intended to disclose Long's statement in a letter to the defense. But the prosecutor admitted that the letter likely was not sent. After finding that the prosecutor's failure to disclose the statement in advance was not intentional, the district court denied Moon's motion to dismiss.

Long's testimony on this matter was stricken from the record. The district court then gave a curative instruction, which Moon approved, and granted a continuance. Moon fails to establish that the district court abused its discretion by handling the discovery violations in this manner.

■ Moon's claims of prosecutorial misconduct also fail. There is no evidence in the record to support Moon's allegation that the prosecutor intentionally withheld the witness statements and fabricated the office memo during the recess to mislead the district court. There also is no record support for Moon's claim that the state used Long's sentencing to induce him to testify falsely. And although Moon again argues that the jury relied on Long's statement, we reject this contention because the jury acquitted Moon of premeditated murder and the second-degree murder conviction was supported by other strong evidence that the shooting was intentional. Because the prosecutor's failure to disclose the two statements had no effect on the verdict, any misconduct was harmless beyond a reasonable doubt, and Moon is not entitled to a new trial.

**D.**

■ Moon next argues that the search warrants for his home and vehicle were defective and that the district court erred in denying his motion to suppress the evidence obtained. Moon contends that, be-cause the warrants do not indicate the time the judge signed them, as required by the rules of criminal procedure, it is possible that the searches were conducted before the warrants were issued. *See* Minn. R.Crim. P. 36.05 (requiring judge to sign original warrant and enter exact time it was signed). Because Moon fails to provide any legal authority in support of his argument that the failure to include the time on the search warrants requires suppression of the evidence seized during the search, this argument is waived. *See State v. Krosch,* 642 N.W.2d 713, 719 (Minn. 2002) (noting that claims unsupported by legal authority are deemed waived). Furthermore, contrary to Moon's argument, there is no evidence that the searches were conducted before the search warrants were signed or that the officers failed to leave copies of the search warrants at the scene. This argument, therefore, lacks merit.

**E.**

■ Moon also contends that the district court erred by (1) denying his right to be present at all stages of the trial, including during the discussions regarding jury instructions; (2) denying the jury's request to review certain evidence; and (3) improperly communicating with the jury. Under Minnesota law, a criminal defendant has the right to be present at "every stage of the trial." Minn. R.Crim. P. 26.03, subd. 1(1). When the jury makes a request to review evidence, the jury "shall be conducted to the courtroom" regardless of the form or the substance of the district court's response. *State v. Charles,* 634 N.W.2d 425, 433 (Minn.App. 2001) (quoting Minn. R.Crim. P. 26.03, subd. 19(2)). All communications between the district court and the jury should take place in open court and in the defendant's presence, unless the defendant has person-

ally and voluntarily waived the right to be present after consulting with counsel and being informed of the right to be present. *Id.* at 432–33. The district court also should make a contemporaneous record of all communications with the attorneys regarding responses to jury questions or requests and, if waived, of the defendant's waiver of his right to be present. *Id.* at 433. When a defendant is denied the right to be present at a stage of trial, a new trial is not warranted if the error was harmless beyond a reasonable doubt or, in other words, if the verdict was surely unattributable to the error. *State v. Sessions,* 621 N.W.2d 751, 756 (Minn.2001). To determine whether the error was harmless, we examine the strength of the evidence and the substance of the district court's response. *Id.* We also take into account "what the defendant would have contributed to his defense if he had been present." *State v. Breaux,* 620 N.W.2d 326, 333 (Minn.App.2001).

■ Moon argues that, on the advice of counsel, he was not present during the discussions regarding jury instructions, and he maintains that he was prejudiced by the decision to omit an instruction on first-degree manslaughter. It is the duty of the district court, not that of the prosecution or defense, to determine what lesser degrees of homicide to submit to the jury. *State v. Leinweber,* 303 Minn. 414, 421–22, 228 N.W.2d 120, 125 (1975). In doing so, the district court must determine "whether the evidence would reasonably support a conviction of the lesser degree" while also justifying an acquittal to the more serious charge. *Id.* at 422, 228 N.W.2d at 125–26. Declining to submit lesser-included offenses to the jury is reversible error unless the decision is a proper exercise of the district court's discretion and the defendant suffers no prejudice. *Id.* at 422, 228 N.W.2d at 126.

To the extent that Moon's allegations on this issue relate to his claims of ineffective assistance of counsel, we decline to address those claims for the reasons discussed above, and we defer those matters for resolution in postconviction proceedings. Moon claims that the attorneys and the district court worked on jury instructions late at night and early in the morning outside his presence. But there is no record of these proceedings, and we cannot speculate regarding any such off-the-record discussions. There is a record, however, of the successful argument by Moon's attorney, over the state's objection, for instructions on self-defense and on the lesser-included offenses of intentional second-degree murder, unintentional second-degree murder (felony murder), and second-degree manslaughter (culpable negligence).

■ Because Moon failed to request an instruction on first-degree manslaughter, he cannot obtain relief unless the district court's failure to give the instruction constitutes plain error affecting substantial rights. *Charles,* 634 N.W.2d at 433. Moon fails to establish that the district court committed plain error. The district court instructed the jury on each lesser-included offense requested by the defense, and there was no evidence presented at trial to support an instruction for first-degree manslaughter under Minn.Stat. § 609.20 (2000). Accordingly, Moon is not entitled to relief on this issue.

We next consider Moon's claim that the district court denied him the opportunity to be present at all stages of the trial. Moon maintains that on four occasions when the jury had questions, the attorneys discussed the matter with the district court in chambers without Moon. Moon was present by telephone when the district court read a note from the jury that asked, "Can we obtain some of the transcripts if

needed?" Moon's attorney argued that the jury should be instructed to rely on their recollection and notes. The state agreed, noting that the request was too vague for a specific response. The district court stated that it would direct the jury by note: "Please refer to jury instructions on page number five, notes taken by jurors. Specifically, it's your recollection of the evidence that should control."

Both attorneys stated on the record that the district court's response was acceptable; Moon's attorney noted for the record that Moon was satisfied as well. Moon now contends that he actually indicated that he "didn't know what was proper to deal with this so whatever the laws state on this [he] will accept." Moon also claims that his attorney continued to answer questions on Moon's behalf, without his knowledge, after hanging up the telephone. But the record reflects only two additional statements by Moon's attorney after Moon was no longer on the telephone, neither of which was substantive. Rather, Moon's attorney stated for the record that he had consulted with Moon and that Moon was comfortable and satisfied with proceeding in the manner they did.

 Moon also argues that the district court erred by denying the jurors' requests to review the transcripts and a map and by failing to bring the jury into the courtroom to address these requests. It is within the district court's discretion to determine whether to allow the jury to review testimony, and a district court's refusal to honor unreasonable requests will be upheld. *State v. Spaulding*, 296 N.W.2d 870, 878 (Minn.1980).

In *Spaulding*, the Minnesota Supreme Court determined that it was prejudicial error under the circumstances presented to refuse the jury's request to review transcripts. *Id.* But even Moon concedes that the jury in *Spaulding* made a request to review specific testimony, whereas the jury here only inquired generally about transcript review. *See id.* (holding that it was prejudicial error to refuse to honor jury's request to review a small portion of the testimony in a close case). Indeed, Moon's attorney opposed granting the jury's request. And Moon consented to responding to the jury by note as proposed by the district court.

As to the jury's request to review the map, the attorneys and the district court apparently drafted a note that informed the jury that the map was not evidence; rather, it was used only for illustrative purposes. The note also advised that all of the exhibits received in evidence were in the jury room. When Moon was asked whether he had reviewed the proposed response and agreed with it, he responded, "Yes, that's fine." The district court then sent the note to the jury. Under these circumstances, the district court's denial of the jury's requests to review these two items was not an abuse of discretion.

Moon also contends that there were instances when the jury was brought into the courtroom in his absence. He reasons that the jury likely assumed that he was not present because he was in custody, which resulted in an improper suggestion of guilt. In support of his argument, Moon refers to two pages that he claims incorrectly indicate he was present when he was not. But these are the transcript cover pages, which do not reflect actual court proceedings. The other pages in the record cited by Moon do not indicate who was present, other than the judge and the jury, and do not affirmatively state that Moon was not present. Thus, the record does not support Moon's contention that he was not present when the district court noted for the record that all jurors were present and sent them to the deliberation room. Moreover, Moon fails to cite any

legal authority in support of his proposition that his alleged absence for these brief encounters with the jury improperly suggested his guilt to the jury.

To the extent that the district court denied Moon the opportunity to be present at every stage of the proceedings and addressed the jury's questions with notes rather than bringing the jury into the courtroom, the district court erred. But Moon was present by telephone on the occasion that is reflected in the record, a contemporaneous record was made of the proposed responses along with the district court's decision before the response was submitted to the jury, and Moon agreed with the way the proceedings were handled. Furthermore, Moon fails to indicate how he would have contributed to his defense if he had been physically present. Because the verdict was surely unattributable to any error committed by the district court, such error is harmless, and Moon is not entitled to a new trial on this ground.

### F.

▮▮▮▮ Moon next argues that the district court erred in its instructions to the jury when the jury indicated it was unable to reach a unanimous decision. Relying on *Charles* and *State v. Martin*, 297 Minn. 359, 211 N.W.2d 765 (1973), Moon argues that the district court (1) erred by sending a note to the jury in response to a question rather than responding in open court, and (2) improperly coerced the jury to reach a verdict.

In *Martin*, the Minnesota Supreme Court held that a district court may not instruct the jury that it must reach a verdict. 297 Minn. at 368–69, 211 N.W.2d at 770. In doing so, the *Martin* court approved the use of the American Bar Association model jury instruction regarding deliberations, which is incorporated in Minnesota's model jury instructions. *Id.*

at 372–73, 211 N.W.2d at 772–73; *see* 10 *Minnesota Practice*, CRIMJIG 3.04 (1999) (providing unanimous verdict instruction). This instruction is intended to ensure that the district court maintains a neutral stance regarding jury deadlock and refrains from applying "any improper pressure on the jury to reach a verdict." *Schultz v. State*, 290 N.W.2d 778, 780 (Minn.1980) (holding that district court did not coerce jury when, after deliberating for 12 hours, jury reported that it was deadlocked and district court asked jury to consider whether it was hopelessly deadlocked or whether it wished to adjourn and return to continue deliberations in the morning). In *State v. Jones*, the Minnesota Supreme Court opined that the jury must be properly instructed regarding its role and duty under CRIMJIG 3.04. 556 N.W.2d 903, 911 (Minn.1996). The district court may require a jury to continue deliberating, but it cannot require the jury to deliberate for an unreasonable length of time or suggest that deadlock is not an option. *Id.* at 911–12. Because the deliberations in *Jones* were not unreasonably excessive and the jury instructions were sufficient, instructing the jury on two occasions to keep deliberating did not exceed the district court's discretion in trial management. *Id.* at 912.

Here, the district court read jury instruction 3.04, almost verbatim, before the jury began its deliberations. The jury deliberated on December 15, 2004, from 2:53 p.m. until 8:09 p.m., at which time the jurors were allowed to go home. On December 16, the jury deliberated from 9:15 a.m. until 12:17 p.m. when the jury sent a note asking, "In this case if the jury does not come to a unanimous decision what happens? Is there a retrial? Is there a mistrial?" The district court proposed as a response that it send a note referring the jury to the applicable instruction. Moon's

attorney indicated that was "sufficient" and agreed with the district court that responding directly to the inquiry would be inappropriate. The district court indicated the note would be delivered to the jury.

At 4:45 p.m., the jury was brought into the courtroom in response to a note stating, "We will not be able to come to a unanimous decision. What should we do?" The district court advised that it is not unusual for the deliberation process to be lengthy in a case of this nature and encouraged the jury to continue deliberating "in an honest effort to reach a unanimous verdict." The district court stated the importance of the jury's continuing efforts as the deliberations had not yet become lengthy. The district court asked the jury to continue deliberating that day or return the next morning to continue, stating that it would respect the jury's decision. The jury opted to go home for the night at 4:50 p.m. The following day the jurors returned and deliberated until they reached a verdict at 4:10 p.m.

Although it was error for the district court to send a note in response to the jury's first question, rather than answering the jury's question in open court, *Charles,* 634 N.W.2d at 432–33, the error was harmless because the district court referred the jury to the appropriate instruction. Moreover, Moon was present and consented to that response. Moon's contention that the district court coerced the jury is also without merit. The record reflects that the district court did not tell the jury that they must reach a verdict or suggest that deadlock was not an option. In light of the short length of time that the jury had been deliberating and the nature of the district court's response, the instruction to continue deliberating was neither coercive nor an abuse of discretion.

## G.

Moon also argues that his second-degree-murder conviction should be reversed because the state failed to prove every element of the offense beyond a reasonable doubt. *See* Minn.Stat. § 609.19, subd. 1(1) (2000) (causing the death of another with the intent to effect death). In considering a claim of insufficient evidence, our review is limited to a painstaking analysis of the record to determine whether the evidence, when viewed in the light most favorable to the conviction, is sufficient to allow the jurors to reach a guilty verdict. *State v. Webb,* 440 N.W.2d 426, 430 (Minn.1989). We assume that the jury believed the evidence supporting the state's theory of the case and disbelieved any evidence to the contrary. *State v. Moore,* 438 N.W.2d 101, 108 (Minn.1989).

We will not disturb the verdict if the jury, acting with due regard for the presumption of innocence and the requirement of proof beyond a reasonable doubt, reasonably could conclude that the defendant was guilty of the offense. *State v. Alton,* 432 N.W.2d 754, 756 (Minn.1988). In reaching its verdict, "the jury may infer that a person intends the natural and probable consequences of his actions and a defendant's statements as to his intentions are not binding on the jury if his acts demonstrated a contrary intent." *State v. Cooper,* 561 N.W.2d 175, 179 (Minn.1997). Rather, intent may be "generally proved circumstantially—by drawing inferences from the defendant's words and actions in light of the totality of the circumstances." *Id.*

Moon argues that, because he testified that he did not intend to shoot his brother and Long's testimony was insufficient to establish intent, the state failed to prove the offense of intentional second-degree murder. Moon contends that Long's ad-

mission that he incorrectly instructed Moon about how to operate the gun negates the determination that Moon intended to shoot his brother in the head. But even though neither Long nor Moon testified that Moon intended to shoot his brother, the jury was able to reasonably infer Moon's intent from his admission that he held a gun to his brother's head, his earlier statement to investigators that he pulled the trigger, and the forensic evidence that established the deceased suffered a contact wound inflicted at a 90–degree angle. Because the evidence was sufficient for the jury to infer that Moon intended to pull the trigger, the jury reasonably could conclude that Moon was guilty of intentional second-degree murder. Moon's argument as to the insufficiency of the evidence, therefore, fails.

## H.

■ Moon next argues that the district court erred in denying his motion to suppress his statements to investigators during a custodial interrogation on March 10, 2002. It was the state's burden to prove that Moon knowingly and intelligently waived his *Miranda* rights and that he voluntarily gave the statement. *State v. Robinson,* 427 N.W.2d 217, 222 (Minn. 1988) (citing *Miranda v. Arizona,* 384 U.S. 436, 475, 86 S.Ct. 1602, 1628, 16 L.Ed.2d 694 (1966)). Unless other evidence indicates involuntariness or ineffective waiver, the state meets its burden when it establishes that the *Miranda* warning was given and that the defendant understood the rights he waived. *State v. Andrews,* 388 N.W.2d 723, 730 (Minn.1986).

■ Based on the evidence at the omnibus hearing, the district court concluded that (1) Moon was properly advised of and waived his *Miranda* rights, (2) the investigators did not coerce Moon, and (3) his statements were voluntary. On re-

view, the district court's findings of fact supporting the determination that a suspect validly waived his *Miranda* rights and voluntarily gave a statement will not be disturbed unless those findings are clearly erroneous. *Robinson,* 427 N.W.2d at 222. But we independently determine whether, under the totality of the facts and circumstances, the state proved that the suspect voluntarily, knowingly, and intelligently waived his rights. *Id.* Relevant circumstances include the suspect's age, maturity, intelligence, education, experience, the length and legality of the detention and the nature of the interrogation, the adequacy of warnings, the deprivation of physical needs, and the denial of access to others. *State v. Camacho,* 561 N.W.2d 160, 168 (Minn.1997).

■ Because exclusion of an involuntary statement is intended to deter improper police interrogation, *State v. Williams,* 535 N.W.2d 277, 287 (Minn. 1995), a finding of coercive police activity is a prerequisite to concluding that a statement was involuntary, *State v. Riley,* 568 N.W.2d 518, 525 (Minn.1997). Improper influence is established if the suspect's will was overborne by police tactics, even if threats or intimidation did not occur. *Id.* Manipulative or overpowering police techniques that deprive a suspect of the ability to make an autonomous decision to speak, or that would make an innocent person confess, render a confession involuntary. *State v. Ritt,* 599 N.W.2d 802, 808 (Minn. 1999).

■ If a suspect invokes the right to remain silent, interrogation must cease. *Williams,* 535 N.W.2d at 282. But "nothing short of an unambiguous or unequivocal invocation of the right to remain silent will be sufficient to implicate *Miranda's* protections." *Id.* at 285. A police interrogator is "allowed to encourage [a] suspect[ ] to talk when the suspect has not

clearly refused." *Id.* at 287. And ordinarily, if a suspect has been fully advised of the *Miranda* warning before there is a break in the questioning, it is not necessary to repeat the *Miranda* warning in order to render a later statement voluntary. *Andrews,* 388 N.W.2d at 731. But if the absence of a second warning left the suspect unaware of the seriousness of the second interrogation and the decision to confess at that time was rendered involuntary by the lack of awareness, then the statement will be suppressed. *Id.* at 731–32 (determining that statement was voluntary even though earlier *Miranda* warning was not repeated before afternoon interview and suspect was emotionally distressed and crying).

■ Here, the record establishes that the interview began at 10:25 a.m. Moon was given a *Miranda* warning almost immediately thereafter. When asked if he understood the rights, Moon replied, "Yeah." And when asked if he wished to speak with investigators, Moon replied, "Yeah." During the interview, Moon began showing signs of stress and asked to see his children, but the investigators refused. The investigators took a break at 10:53 a.m. At approximately 11:00 a.m., Moon was arrested. After the arrest, Moon was advised: "[O]bviously you have *Miranda* Rights, and you have the right to remain silent. Ah, you have the right to talk to an attorney, ah, you can choose whether you want to talk to us or not." Without asserting that he did not understand his rights, Moon complains of the investigators' failure to repeat the entire *Miranda* warning. However, because Moon had received a complete *Miranda* warning less than an hour earlier, he was with the same investigators in the same room, and he was aware of the seriousness of the situation, the failure to give another *Miranda* warning does not warrant suppression of Moon's statements.

■ Moon also argues that his waiver of rights was not voluntary. He asserts that he was exercising his right to remain silent when he stated that he would "rather not talk about this right now," he was "not ready," he would "take care of this tomorrow," and he needed to see his children. But because Moon did not unequivocally ask to cease the interview, state a desire to remain silent, or discontinue answering questions, he failed to invoke his right to remain silent. *Williams,* 535 N.W.2d at 285.

Moon argues that his state of mind and the investigators' tactics of blaming the victim, minimizing the situation, and denying him access to others by terminating his phone call and not allowing him to see his children rendered his statement involuntary. Although Moon was emotional and cried through much of the interview, his responses indicate that his emotions did not impair his ability to understand questions or respond intelligently. Moreover, the investigators explained to Moon their need to avoid any appearance of coercion when denying his offer to take them to the scene of the shooting if he could see his children first. On these facts, Moon's claim that his statement was not voluntarily given is unavailing.

■ Finally, Moon argues that, in violation of his Fourth Amendment right to be free from unreasonable search and seizure, he was denied freedom of movement without probable cause in order to secure his statement. This issue is deemed waived due to Moon's failure to fully brief the issue and provide legal authority in support of his claim. *Krosch,* 642 N.W.2d at 719. Nonetheless, we have reviewed the claim and conclude it is without merit.

Moon argues that, at the beginning of his interview, he was not allowed to see his children; but he admits that, shortly thereafter, he was allowed to go outside for a break. An investigator testified that the decision to arrest Moon already had been made and that Moon was arrested right after the break. The district court found that the investigators had probable cause to arrest Moon without a warrant. *See State v. Merrill,* 274 N.W.2d 99, 108–09 (Minn.1978) (stating that warrantless felony arrest is valid if officers have factual information from reliable sources sufficient to reasonably believe suspect committed a felony). The investigators knew that Moon was the last person seen with his brother, witnesses reported that they had heated arguments over the phone and a physical confrontation on the day Moon's brother disappeared, the body had been found, and blood had been found in Moon's vehicle. Even if the arrest occurred at the beginning of the interview, the arrest would have been supported by probable cause.

Our review of the record establishes that the investigators did not improperly detain or manipulate Moon to get him to cooperate. The investigators allowed him to smoke cigarettes and offered beverage and restroom breaks. There is no evidence to support Moon's claim that the investigators engaged in coercive police tactics that overpowered Moon's will such that his statement regarding the shooting was not voluntarily made. Because Moon was advised of his rights and voluntarily waived them before giving his statement, the district court did not err in denying the motion to suppress.

## DECISION

Although the district court erred by failing to give an accomplice-testimony instruction, under a harmless-error analysis, appellant is not entitled to a new trial because the record establishes beyond a reasonable doubt that the error did not have a significant impact on the verdict. Appellant fails to demonstrate that substantial and compelling circumstances warrant a sentence reduction. And appellant has not established that he is entitled to relief based on the issues raised in his pro se supplemental brief.

**Affirmed.**